66 N.J. Super. 346 (1961)
169 A.2d 178
DAVID WAJDENGART, ET AL., PLAINTIFFS-RESPONDENTS,
v.
BROADWAY-THIRTY-THIRD CORPORATION, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1961.
Decided March 21, 1961.
*348 Before Judges GOLDMANN, FOLEY and COLLESTER.
Mr. Leonard I. Garth argued the cause for the appellant (Messrs. Cole, Berman and Garth, attorneys).
Mr. Bernard G. Goldstein argued the cause for respondents.
The opinion of the court was delivered by COLLESTER, J.S.C. (temporarily assigned).
This appeal is taken from a judgment of the Law Division reversing the award of a zoning variance granted pursuant to N.J.S.A. 40:55-39(d).
The defendant contends that the findings of the board of adjustment of the City of Paterson, confirmed by the board of public works of said city, granting a variance for "special reasons" pursuant to N.J.S.A. 40:55-39(d) are supported by substantial evidence and that the trial court *349 erred in holding that traffic congestion and the need for off-street parking were legally insufficient as "special reasons" under the statute, and in not regarding the board's finding as to existing neighborhood characteristics and property use as sufficient, together, to constitute a "special reason."
In December 1956, 707 Broadway Corp., defendant corporation's predecessor, having contracted to purchase property located at the southwesterly corner of Broadway and East 33rd Street in Paterson (hereafter referred to as the East 33rd Street tract), secured a variance from the city under N.J.S.A. 40:55-39(d) to permit the erection of a professional office building on said property in a zone known as "Multiple Family Residence Zone D-2." In April 1957 the defendant corporation took title thereto, and in May 1957 it also purchased the adjoining property located on the southeasterly corner of Broadway and Wall Avenue which was zoned as "Residence A" (hereafter referred to as the Wall Avenue tract).
The original plans filed to secure the variance for the East 33rd Street tract provided for the construction of a four-story building on piers with parking facilities beneath the building and on part of the tract on East 33rd Street. Some of the plaintiff-objectors, all of whom reside on Wall Avenue in the Residence A Zone, inspected the original plans and made no objection to the granting of the variance. In October 1957, without notice to the objectors, the defendant filed revised plans which provided for the erection of a two-story building, not supported by piers, instead of the building originally proposed. The revision provided for parking on the rear part of the East 33rd Street tract and showed a parking area on the Wall Avenue tract. Thereafter the Physicians' Building was erected at the Broadway and 33rd Street corner.
When one Leon Lanson, one of the plaintiffs, learned of the revised plan and objected, the defendant and he entered into a written "stipulation" dated February 28, 1958, agreeing that the variance granted in December 1956 did not *350 include the Wall Avenue tract and that such property was subject to all restrictions pertaining to a Residence A Zone. In July 1958, over plaintiffs' protests and without endeavoring to obtain a variance, the defendant constructed a parking lot and driveway on the Wall Avenue tract to be used in connection with the Physicians' Building. On August 1, 1958 plaintiffs filed a complaint and secured a temporary injunction in the Chancery Division restraining the use of the tract for parking, which action is being held in abeyance pending the outcome of this suit.
In November 1958 defendant made application to the local board of adjustment for a variance to permit the use of the Wall Avenue tract for an off-street parking lot to be used in conjunction with the Physicians' Building. Following a hearing the board recommended the variance, subject to certain limitations, which recommendation was thereafter approved by the board of public works for the city. Plaintiffs brought an action in lieu of prerogative writ to review the grant of the variance, alleging that the findings of the board of adjustment were arbitrary, capricious and unreasonable; that the variance was not supported by "special reasons," and that it violated the Zoning Act and Paterson's zoning ordinance. Answers were filed and issue joined. On September 30, 1959 the Law Division entered an order returning the proceeding to the board of adjustment for supplemental findings. These were filed, and the board of public works thereafter gave its approval. The matter then came on for oral argument, resulting in a reversal by the Law Division of the action taken by both boards, and holding the findings not sufficient to show the existence of "special reasons." Defendant appealed the resultant judgment.
Two critical findings are required to be made by the board of adjustment to warrant a recommendation for a variance under N.J.S.A. 40:55-39(d), namely, (1) that "special reasons" exist for the variance, and (2) that the variance can be granted without substantial detriment to the public good and will not substantially impair the intent *351 and purpose of the zone plan and the zoning ordinance. Andrews v. Ocean Tp. Board of Adjustment, 30 N.J. 245, 249 (1959).
In the instant case the board of adjustment found two "special reasons" upon which the granting of the variance was predicated: (1) traffic congestion and lack of off-street parking in the area, and (2) the undesirability of the property for residential use for which it was zoned. It further found that the granting of the variance would have no adverse effect on the property values in the neighborhood; that the use of the property as a parking area would be a "stabilizing factor" in the neighborhood and would be the best use for the property, for the area and for the community as a whole. It found that the grant would not substantially impair the intent and purpose of the zone plan and the zoning ordinance and that the variance could be granted without substantial detriment to the public good.
Upon a review of the proceedings the trial court held that under the circumstances of this case the alleviation of traffic conditions and congestion by off-street parking would not of itself constitute a "special reason" within the statute, and that the mere undesirability of the Wall Avenue tract for residential purposes did not constitute a "special reason" within the meaning of the statute.
It is axiomatic that where a variance is granted by municipal officials pursuant to statutory authority it is entitled to the customary judicial presumption of validity. The reviewing court may not intervene to set aside the variance except upon a showing that the action of the municipal officials was arbitrary, capricious or in manifest abuse of their discretionary authority. Grundlehner v. Dangler, 29 N.J. 256 (1959); Ward v. Scott, 16 N.J. 16, 23 (1954); Suesserman v. Newark Board of Adjustment, 61 N.J. Super. 28, 31 (App. Div. 1960). The applicant has the burden of setting before the board of adjustment the evidence necessary for the exercise of its seasoned discretion. Tomko v. Vissers, 21 N.J. 226 (1956).
*352 However, the reviewing court is clearly required to appraise the findings made by the board of adjustment to determine from the record if there was evidence to support the statutory criteria, namely, the existence affirmatively of sufficient special reasons to grant the variance, and negatively of adequate evidence that the granting of the variance would be without substantial detriment to the public good and would not substantially impair the intent and purpose of the zone plan and the zoning ordinance.
The "special reasons" for which a variance is granted must fulfill one of the purposes specified in R.S. 40:55-32. Ward v. Scott, 11 N.J. 117, 125 (1952); Grundlehner v. Dangler, supra, 29 N.J., at pp. 265-266 (1959); Andrews v. Ocean Tp. Board of Adjustment, supra, 30 N.J., at p. 251 (1959). See Cunningham, "Control of Land Use in New Jersey by Means of Zoning," 14 Rutgers L. Rev. 37, 86-87 (1959). R.S. 40:55-32 provides:
"Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; * * * promote * * * the general welfare; * * *. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality." (Emphasis added)
Defendant seeks to justify a variance for off-street parking on the ground that it will tend to lessen congestion and eliminate hazardous traffic conditions, hence promoting the general welfare. Furthermore, it is urged that consideration of the character of the district, the peculiar suitability of the land for use as off-street parking, the conservation of the value of property, and the encouragement of making the most appropriate use of the land militate in favor of the variance granted.
Manifestly, every variance which will tend to lessen congestion in the streets and hence somewhat promote the *353 general welfare cannot be considered as justified under the "special reasons" criteria. Otherwise, any variance sought for off-street parking facilities would automatically be granted. Nobody disputes the proposition that off-street parking eliminates some cars from the streets and hence tends to lessen congestion and promote the general welfare. At some point, however, the contribution to the lessening of congestion and traffic hazards and the promotion of the general welfare become de minimis. Moreover, as indicated by R.S. 40:55-32, there are other relevant considerations. Consequently, a variance for off-street parking is not per se justified merely because the board of adjustment finds that off-street parking will decrease congestion and hence promote the general welfare, and because this finding is supported by substantial evidence. A finding that off-street parking will take some cars off the street and hence tend to eliminate traffic congestion and traffic hazards perhaps would not even require substantial evidence to support it. We might take judicial notice of this fact. Thus, in not every instance should a finding, supported by substantial evidence, that off-street parking will eliminate traffic congestion, suffice as a "special reason" to grant a variance. We must in each case examine the evidence supporting the finding and determine whether in light of all the relevant circumstances there exists a "special reason" to grant the variance. The extent of the benefit conferred upon the public by the off-street parking must be examined. If the benefit is non-existent or de minimis, a "special reason" may not exist; if, however, the findings or the evidence indicate that the benefit conferred upon the surrounding area clearly preponderates in favor of the variance, the variance should be granted. Suesserman v. Newark Bd. of Adjustment, supra, 61 N.J. Super., at pp. 34-35. It was on this basis that this court distinguished Mistretta v. City of Newark, 33 N.J. Super. 205 (Law Div. 1954), relied upon by the defendant in Suesserman.
The following passage from our opinion in Suesserman is applicable to the case sub judice:
*354 "We agree with the trial court that the proofs before the board of adjustment did not justify a finding that the general public would benefit by the variance. The only suggested benefit is that the off-street parking would tend to lessen traffic and vehicular congestion and thus would promote the public safety. However, there was no persuasive proof that this result would be realized or that off-street parking facilities, if needed, would best serve the public interest by being placed on defendant's lot. Mocco v. Job, supra, 56 N.J. Super. [468], at page 478; Cunningham, supra, 14 Rutg. L. Rev., at pp. 581-84. See Grundlehner v. Dangler, supra, 29 N.J., at page 267; Antieau, Municipal Corporations, sec. 7.09, p. 454 (1955). Cf. R.S. 40:55-32. We are of the firm belief that the removal of between 15 and 25 vehicles from the highway to private property in a congested area would have little or no effect on the diminution of parking problems in the area, particularly since, as was conceded by counsel on oral argument, the removal of these vehicles from the curb would likely result in their being replaced by the vehicles of others who sought to park in the neighborhood." (61 N.J. Super., at p. 35)
The evidence before the board shows that both Broadway and East 33rd Street are burdened with heavy traffic. No parking is permitted on Broadway between East 33rd Street and Wall Avenue and hence it seems obvious that the proposed parking lot on the Wall Avenue tract would have no effect upon traffic congestion on Broadway. It is also clear that the parking lot would hold no more than 20 cars and that the 20 spaces thus vacated on East 33rd Street or other streets in the area would undoubtedly be filled with other cars in view of the critical parking problem. Thus it is difficult to perceive in just what way the parking lot would lessen traffic congestion on East 33rd Street.
The proposed parking lot would serve merely the individual interests of the defendant and not the public at large. Even if the proposed variance should actually result in a few more available parking spaces on the streets, the benefit to the public in the matter of relief of traffic congestion, if any, would be de minimis.
The facts as to off-street parking fall squarely within the holding of this court in Suesserman. Under the circumstances present, the alleged benefit conferred by the off-street *355 parking is insufficient to justify the granting of a variance under N.J.S.A. 40:55-39(d).
The second "special reason" urged by defendant is the unusability of the Wall Avenue property for residential purposes, the characteristics of the property and its location. Although it is true that the "use being permitted must be viewed in the light of the surroundings as they actually are and that will include all `uses which by whatever authority exist in a neighborhood,'" Grundlehner v. Dangler, supra, 29 N.J., at p. 267, it is also true that "Every zone plan that divides a community into districts contains residential lands adjacent to business lands" and "if that fact, without more, were sufficient to call for a variance, the impairment and destruction of the zone plan and zoning ordinance would progressively result, in direct violation of the concluding provision in R.S. 40:55-39 and decisions of this court." Ward v. Scott, 11 N.J. 117, 128 (1952). As in Suesserman, the findings of the board of adjustment as to the location of the property were merely descriptive of the surrounding area and not sufficient to constitute a "special reason" within the purview of the statute.
Although hardship may constitute a special reason within the meaning of N.J.S.A. 40:55-39(d), see Dolan v. DeCapua, 16 N.J. 599 (1954), there was no finding or evidence of hardship in the instant case. Per contra, at the time of its purchase the property was zoned against the use now sought, and if defendant did not know it then, which is doubtful, it could easily have ascertained the fact. No doubt, the property was bought in the hope of securing a variance. See Lumund v. Board of Adjustment, 4 N.J. 577, 581 (1950).
The board did find that
"* * * the property in question is not as desirable as the other residential property due to its location in the area of the neighborhood described and its adjacency to Broadway on an upgrade with the traffic noises, fumes and lights."
*356 This finding is similar to the finding made by the board in Suesserman:
"* * * the premises in question create conditions peculiar to this lot and if residential restrictions were enforced it would create a burden upon the property owner."
The trial court in Suesserman noted that there was no proof that the tract there involved could not be used for residential purposes, or that refusing the request for variance would compel conformance to an unsuitable permissible use, and that merely because it would be more beneficial financially to the owner to utilize the land as a parking lot is not a "special reason" contemplated by the statute, citing Moriarty v. Pozner, 21 N.J. 199, 208 (1956). This court stated that it was in accord with the views of the trial court. Suesserman v. Newark Board of Adjustment, supra, 61 N.J. Super., at p. 33.,
Likewise, in the present controversy there is no finding that the property is unsuitable for residential use. The fact that the nonconforming use sought would be more profitable is not per se sufficient reason for the granting of a variance. The statute aims to conserve and not to enhance the value of property. See Moriarty v. Pozner, supra, 21 N.J. 199, at p. 208-209.
Finally, it is argued that whether or not each of the findings, i.e., those pertaining to traffic and off-street parking, or those pertaining to the undesirability of use of the property and the neighborhood characteristics, by itself constitutes a "special reason," certainly in combination they may support the grant of the variance. It is true that in Ward v. Scott, supra, 16 N.J. 16, at p. 21, it was stated that:
"* * * it is in no wise controlling that one or more of the reasons standing alone would not be legally sufficient."
However, the present record does not indicate that the strength gained by combination is sufficient to support the variance.
*357 We find that "special reasons" within the purview of N.J.S.A. 40:55-39(d) sufficient to justify the granting of a variance have not been established by substantial evidence.
We turn next to the finding of the board with respect to the negative criteria requirements of N.J.S.A. 40:55-39(d). The Wall Avenue tract is the beginning of a Residence A Zone which comprises one of the finest residential areas in Paterson. There was substantial evidence that property on Wall Avenue would depreciate in value if the off-street parking lot is permitted. It is also to be noted that the defendant corporation, having secured a variance to construct the Physicians' Building and its parking area in a zone where such use was prohibited, now seeks to enlarge such use by nibbling away at the adjoining Residence A Zone.
The conversion of any parcel of land in a residential zone to a business use presumably impairs the residential character of the area as a whole. The potential harm is not to be gauged by comparing the size of the parcel in question with the entirety of the residential area, since the process of deterioration of a residential area may be incepted by isolated discordancies in use. Rain or Shine Box Lunch Co. v. Newark Board of Adjustment, 53 N.J. Super. 252, 260 (App. Div. 1958).
To grant defendants the variance it seeks would thus benefit the commercial development of its property at the expense of the resident neighbors.
We agree with the finding of the trial judge that the board's finding that the variance will not substantially impair the intent and purpose of the zone plan and zoning ordinance is not supported by the evidence. We find that the action of the board of adjustment in recommending the variance which was confirmed by the board of public works was arbitrary, capricious and a manifest abuse of their discretionary authority.
Affirmed.