**KELLY SUPPLY COMPANY, INC.,**
Appellant,

v.

**CITY OF ANCHORAGE and Greater**
**Anchorage Area Borough,**
Appellees.

**No. 1904.**

Supreme Court of Alaska.

Dec. 17, 1973.

---

15. Slaughter v. Zimman, 105 Cal.App.2d 623, 234 P.2d 94 (1951).

16. Evans v. Scottsdale Plumbing Co., 10 Ariz. App. 184, 457 P.2d 724 (1969).

Robert H. Wagstaff of Friedman, Wagstaff, Ravin & Rubinstein, Anchorage, for appellant.

David G. Shaftel, Asst. City Atty., John R. Spencer, City Atty., Lee S. Glass, Asst. Borough Atty., Sheila Gallagher, Borough Atty., Anchorage, for appellees.

Before RABINOWITZ, C. J., and CONNOR, ERWIN, BOOCHEVER and FITZGERALD, JJ.

## OPINION

CONNOR, Justice.

This case centers on the interpretation and application of certain zoning ordinances of the Greater Anchorage Area Borough.

The appeal is from a superior court judgment affirming the ruling of the Borough's Board of Examiners and Appeals which denied appellant Kelly Supply Co. the right to lease its building to certain tenants for office use.

The building in question is located at the corner of 10th Avenue and "I" Street in Anchorage, Alaska. Prior to March, 1969, it was used by the Alaska Crippled Children's Association [hereinafter referred to as "ACCA"] as a diagnostic, treatment and educational center for handicapped children. This use conflicted with the R–3 (multiple-family residential) zoning applicable to the district in which the building was located; but, since ACCA's use preceded the adoption of this zoning classification, the use was permissible under section 21–7 of the Zoning Ordinance of the Greater Anchorage Area Borough.

After ACCA vacated the building, appellant Kelly Supply apparently obtained an option to purchase the property. On March 27, 1969, Kelly Supply asked the borough planning staff whether the building could be used for medical offices, a community blood bank and apartments. The staff responded that such a use (particularly the proposed medical offices) would not be permitted. Kelly Supply appealed this decision to the Board of Examiners and Appeals. The board heard the matter on April 10, 1969, and held:

"that the A.C.C.A. building at 10th and 'I' Streets could be used for a community blood bank and apartments, as well as

accessory pertinent uses related thereto, but that full time professional uses would not be included."

Kelly Supply purchased the building, and the blood bank moved in, occupying about twenty-five percent of the premises. On August 20, 1969, Kelly Supply leased part of the rest of the building to the Alaska Mental Health Association [hereinafter referred to as "MHA"] for use as an office. On either March 15, 1970, or April 1, 1970, Kelly Supply leased the remainder of the building to the Rural Alaska Community Action Program [hereinafter referred to as "Ruralcap"].

On April 16, 1970, Ruralcap began moving into the building. Upon receiving a complaint about the truckloads of office furniture being moved in, a city urban environmental officer investigated and told the executive director of Ruralcap that its use of the premises was prohibited by the zoning ordinance. Nevertheless, Ruralcap moved its employees into the building and began its operations.

A series of communications was exchanged between city enforcement officials and Kelly Supply and its tenants. The officials continuously requested that the illegal use of the premises be terminated. Kelly Supply refused to comply and appealed to the Board of Examiners and Appeals.

The board first considered the matter on June 11, 1970, and unanimously decided that Ruralcap and MHA could not be considered "accessory pertinent uses" to the blood bank under the board's April 10, 1969, ruling. The issue was then raised as to whether Ruralcap and MHA could be allowed to use the premises pursuant to section 21–7(E)(3) of the Zoning Ordinance of the Greater Anchorage Area Borough, which allows the board to authorize a change of nonconforming uses if the proposed use is "more appropriate to the district than the existing nonconforming use." Kelly Supply argued that its proposed nonconforming use, consisting of the

blood bank, Ruralcap and MHA, should be compared to the old ACCA use. The board rejected this contention, proceeding on the assumption that the ACCA use had been terminated by the board's April 10, 1969, ruling, and that the proposed three-agency use should be compared to the existing blood bank use.

On July 9, 1970, the board further considered the issue and unanimously held that the combination of nonconforming uses consisting of the blood bank, Ruralcap and MHA was not more appropriate to the zoning district than the single blood bank nonconforming use.

On July 28, 1970, Kelly Supply appealed the Board of Examiners and Appeals' decision to the Anchorage City Council, sitting as a board of adjustment. That body heard the appeal on September 8, 1970, and unanimously upheld the decision of the Board of Examiners and Appeals. Kelly Supply appealed the decisions of these administrative bodies to the superior court which affirmed the rulings on December 22, 1972. Kelly Supply then appealed to this court.

Appellant raises four issues on appeal. First, it argues that there was a denial of due process of law at the administrative level in that appellant was given no opportunity to cross-examine witnesses who testified at the Board of Examiners and Appeals hearings. Second, appellant alleges that in determining whether a section 21–7(E)(3) change in nonconforming uses was permissible, the court and administrative bodies erred in taking the blood bank use as the starting point rather than the previous ACCA use. Appellant's third contention is that the decision of the Board of Examiners and Appeals, affirmed by the Board of Adjustment and the superior court, was unsupported by and contrary to the evidence. Finally, appellant argues that appellees should not have been awarded any attorney fees absent a finding of bad faith on appellant's part in bringing the action.

## I. *Right to Cross-Examination.*

█ There was no denial of due process by the Board of Examiners and Appeals. Appellant Kelly Supply was represented at the board hearings by an attorney. At no point during those hearings did appellant's attorney or any other representative of Kelly Supply ever ask the board for permission to cross-examine any of the witnesses. The board was thus given no chance to rule one way or the other on such a request. As stated in 2 E. Yokley, Zoning Law and Practice, 1972 Cum.Supp. at 46 (3d ed. 1965):

"While the right of cross-examination undoubtedly exists in hearings on zoning matters, it is a right that may be waived. Objections to a denial of the right must be timely made, meaning made at the time of denial; otherwise, the failure to object constitutes a waiver." (footnote omitted)

Appellant has waived any right to cross-examination it may have had by failing to assert it.[1]

## II. *The Section 21–7(E)(3) "Existing Nonconforming Use".*

Section 21–7(E)(3) of the Zoning Ordinance of the Greater Anchorage Area Borough allows the Board of Examiners and Appeals to authorize a change of nonconforming uses if the proposed use is "more appropriate to the district than the existing nonconforming use."[2]

The question is what is the "existing nonconforming use" in the present case. The administrative bodies and the superior court found that the "existing nonconforming use" was the blood bank. They found that the ACCA nonconforming use had been terminated by the action of the Board of Examiners and Appeals on April 10, 1969, which gave the blood bank permission to occupy the building. Appellant contends that this was error, that the starting point of the section 21–7(E)(3) determination should have been the ACCA use and not the blood bank use. Such a conclusion would, of course, be advantageous to appellant since the ACCA use was considerably more intensive than the blood bank use.

Appellant bases its argument on the contention that when it purchased the building, it obtained a vested right to use the building in a nonconforming manner identical to the ACCA use. Appellant contends that the right to continue ACCA's nonconforming use has never been lost; that the mere fact that permission was given to use the property as a blood bank could not and did not operate to destroy appellant's vested right in the ACCA nonconforming use. Appellant argues that there was no change in use involved in the transition from ACCA to the blood bank, and that even if there had been such a change, Kelly Supply's vested right in the ACCA use somehow survived this change. According to appellant, the only way this vested right can be terminated is by abandonment, and the ACCA use was never abandoned.

█ We disagree. We hold that any rights in the ACCA nonconforming use were terminated when the blood bank assumed occupancy pursuant to the April 10, 1969, decision of the Board of Examiners and Appeals. At that point, the blood bank became the "existing nonconforming use" with which any future proposed changes in use must be compared. It is not necessary

1. Welch v. Zoning Bd. of Appeals, 158 Conn. 208, 257 A.2d 795, 797–798 (1969); Gibson v. Talbot County Bd. of Zoning Appeals, 250 Md. 292, 242 A.2d 137, 141 (1968).

2. Section 21–7(E)(3) states:
"If no structural alterations are made, any nonconforming use of structure and premises may be changed to another nonconforming use provided that the Board of Examiners and Appeals, either by general rule or by making findings in the specific case, shall find that the proposed use is more appropriate to the district than the existing nonconforming use. In permitting such change, the Board of Examiners and Appeals may require appropriate conditions and safeguards in accordance with the provisions of this ordinance."

to find a technical, section 21–7(E)(5)[3] abandonment of the ACCA use. Mere change of use is enough.

 Appellant implies that since the ACCA and the blood bank are both "medical uses," no change of use occurred. This suggested generic classification of uses has, however, been rejected by numerous decisions.[4] Most courts define "use" narrowly, consistent with the general policy that nonconforming uses are to be restricted and terminated as quickly as possible. It is the particular use, and not its general classification, that is contemplated by provisions like section 21–7 of the Zoning Ordinance of the Greater Anchorage Area Borough. Thus, the transition from ACCA to the blood bank was a change of use, and the superior court did not err in finding that the blood bank was the "existing nonconforming use."

### III. *Was There An Abuse of Discretion?*

Appellant contends that the Board of Examiners and Appeals abused its discretion in not granting the requested section 21–7(E)(3) change of use. Appellant argues that the board had insufficient evidence on which to base its decision.

In Keiner v. City of Anchorage, 378 P. 2d 406 (Alaska 1963), we adopted the substantial evidence test with respect to judicial review of the actions of administrative bodies. "Substantial evidence" was in that case defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 411 (footnote omitted). And, in Anderson v. Employers Liability Assurance Corp., 498 P.2d 288, 290 (Alaska 1972), we stated:

"It is not important that the particular situation before the board is subject to more than one inference. What matters is whether the determination of the board is supported by substantial evidence on the whole record." (footnote omitted)

 At their June 11 and July 9 meetings, the Board of Examiners and Appeals heard testimony from zoning enforcement officers, city planning officials, representatives of Kelly Supply and one citizen of the neighborhood. The testimony included descriptions of the activities engaged in by all the agencies involved (ACCA, blood bank, MHA, and Ruralcap), estimates of the number of people brought to the building by each agency, and lengthy discussions of the parking problems resulting from Ruralcap's occupancy. It is quite true, as appellant points out, that no detailed impact studies showing detrimental effects on surrounding property were presented to the board by the City Planning Department. But, this would not seem vital to compliance with the substantial evidence test. The building is in an R–3 district. R–3 districts are zoned as multiple-family residential districts. There is no question that all four principal uses mentioned in the facts of this case are nonconforming since R–3 zoning does not permit office uses. The only question for the board was whether appellant's proposed three-agency use was "more appropriate to the district" than the existing use. The evidence presented to the board was sufficient for them to reasonably conclude that the proposed use would not be more appropriate. If appellant was dissatisfied with the nature or amount of the evidence (the lack of "impact studies", for instance), it

3. Section 21–7(E)(5) of the Zoning Ordinance of the Greater Anchorage Area Borough states:

"When a nonconforming use of a structure and premises is discontinued or abandoned for one year (except when government action impedes access to the premises), the structure and premises shall not thereafter be used except in conformity with the regulations of the district in which it is located."

4. *See, e. g.,* Wechter v. Board of Appeals, 3 Ill.2d 13, 119 N.E.2d 747, 748 (1954); Auditorium, Inc. v. Board of Adjustment, 8 Terry 373, 91 A.2d 528, 535 (Del.1952). *See also* 2 A. Rathkopf, The Law of Zoning and Planning, at 58–12 and 58–13 (3d ed. 1972); 1 R. Anderson, American Law of Zoning § 6.32, at 379 (1968).

was incumbent upon appellant to object and to provide the additional evidence desired. The burden of proof in a case such as this is on the appellant.[5]

■ Appellant makes the additional argument that under section 21–7(E)(2) of the Anchorage Zoning Ordinance,[6] the blood bank "could have expanded throughout the building with offices and any other necessary uses with their attendant burdens upon the community." Appellant completes its argument by implying that it would be impermissible for the board to deny Ruralcap the opportunity to fill the building with offices when the blood bank has this right. Appellant's argument is not convincing. Even if appellant's major premise were assumed to be true, it would still be open to the board to find that the type of activity and number of people involved in an expanded blood bank use would be significantly less nonconforming than the activities and numbers already shown to be involved in the blood bank-Ruralcap-MHA use.

It should be added here that it is not enough for appellant to show that the three-agency use is no more nonconforming than the blood bank expanded throughout the building would be. Since the three-agency use would be a change in use from the present one-agency use, under § 21–7(E)(3), the three-agency use would

have to be shown to be "more appropriate to the district than the existing [one-agency] nonconforming use." This, appellant has not done.

## IV. *Attorney Fees.*

■ Pursuant to Rule 82[7] of the Alaska Rules of Civil Procedure, the superior court awarded attorney fees of $1,000 to be divided equally between the two prevailing parties, the Greater Anchorage Area Borough and the City of Anchorage. Appellant asserts that this was error. Appellant would have this court adopt an interpretation of Rule 82 under which a government, when it is the prevailing party in a suit brought against it, is not entitled to recover attorney fees from the losing party absent a finding that the action was vexatious and not brought in good faith.

We decline to adopt such a rule in the present case.[8] This was not a matter of a disinterested citizen bringing suit to resolve a question of public concern. No important matters of public policy were determined by the litigation. In bringing this case, Kelly Supply was seeking to vindicate a purely private interest. The superior court did not err in awarding attorney fees.

We affirm the judgment of the superior court.

---

5. *See* Hyman v. Coe, 146 F.Supp. 24, 32 (D.D.C.1956); Wajdengart v. Broadway-Thirty-Third Corporation, 66 N.J.Super. 346, 169 A.2d 178, 181 (App.Div.1961). Although these cases concern applications for variances, they support the proposition that the burden of proof in a case such as the present one rests on the applicant for the change in use.

6. Section 21–7(E)(2) of the Zoning Ordinance of the Greater Anchorage Area Borough states:
 "Any nonconforming use may be extended throughout any parts of a building which were manifestly arranged or designed for such use at the time of adoption or amendment of this ordinance, but no such use

shall be extended to occupy any land outside such buildings."

7. Rule 82 states in pertinent part:
 "Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount."

8. It should be noted that this court has previously sustained attorney fee awards to government entities in cases both "presenting a public question", Dale v. Greater Anchorage Area Borough, 439 P.2d 790, 793 (Alaska 1968), and "serving no public interest", Jefferson v. City of Anchorage, 513 P.2d 1099, 1102 (Alaska 1973).