197 N.J. Super. 134 (1984)
484 A.2d 334
JOHN F. O'DONNELL, PLAINTIFF-APPELLANT,
v.
JEROME R. KOCH, CAROL A. KOCH HIGGINS, GEORGE J. KOCH FUNERAL HOME, INC., A CORPORATION OF THE STATE OF NEW JERSEY, BOARD OF ADJUSTMENT OF THE CITY OF BAYONNE, MUNICIPAL COUNCIL OF THE CITY OF BAYONNE, A BODY POLITIC AND CORPORATE OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 2, 1984.
Decided November 9, 1984.
*136 Before Judges MICHELS, PETRELLA and BAIME.
McDonald, Rogers & Rizzolo, attorneys for appellant (Michael J. Rogers, on the brief).
Robert F. Sloan, Law Director, attorney for respondents Board of Adjustment and Municipal Council of the City of Bayonne.
No brief was filed on behalf of respondents Jerome R. Koch, Carol A. Koch Higgins and George J. Koch Funeral Home, Inc.
PER CURIAM.
Plaintiff, an objecting landowner, appeals the decision of the trial court upholding the grant of a variance by the Bayonne Municipal Council (Council) to defendant Jerome R. Koch, Carol A. Koch Higgins and George J. Koch Funeral Home, Inc. (applicants).[1]
*137 The applicants owned and operated a funeral home on the southwest corner of West 31st Street and Avenue C in Bayonne under a variance granted by the Bayonne Board of Adjustment (Board) in 1950. No mention was made in that variance application of a parking area.[2]
The applicants submitted plans to the Bayonne Department of Community Development for a 13-space parking area on the vacant lots adjoining the funeral home. They received a June 4, 1980 letter of denial from the zoning officer indicating that the "proposal would be in violation of Sections 22-9e, 22-10.1, 10.4 and 22-14.1 of the Zoning Ordinance of the City of Bayonne," and that site plan review was required. By application dated September 23, 1980, with a copy of the June 4 denial letter attached, a variance was sought "in accordance with the plans filed herewith."
The 1980 zoning application[3] had indicated that the property on which the funeral home is located consists of four separate tax lots (numbered 23A, 24A, 25 and 26 in Block 197) with a combined frontage of 103.75 feet. The property also serves as the residence of Jerome Koch and Carol Koch Higgins. The funeral home itself lies entirely within the corner-most lots *138 (23A and 24A). Lots 25 and 26 adjoin an objector's property on the south and are essentially vacant except for a relatively small two-story frame garage on the rear-most portion of the property. The applicants sought a variance because of a lack of parking facilities as well as traffic problems in the area.
The area of Bayonne in which the funeral home is situated is apparently completely developed and heavily trafficked. The neighborhood in this residential zone includes various non-residential uses, including a church, a school, a library, an architect's office, several doctor's offices and a Knights of Columbus Hall. The funeral home proposed to provide for parking facilities on lots 25 and 26 solely for the use of its patrons.
Testimony presented before the Board on behalf of the applicant indicated that only about 40 funerals were conducted per year at the Koch Funeral Home. On those days on which wakes were conducted, the parking lot would be occupied by visitors from about 2 to 4 p.m. and 7 to 9 p.m. Three spaces in the lot would be reserved for the Koch family and for employee use. The applicants had presented testimony about traffic hazards, including double parking and the hazard caused by funeral processions lining up the wrong way on a one-way street and difficulty in conducting funerals and inconvenience to patrons who often had to park several blocks away. The applicants planned to line up funeral processions in the proposed parking area to alleviate some of these problems.
The existing two-story garage was proposed to be demolished and shrubbery presently found on the lots was to be removed and replaced with a black-top surface having a 13 parking-space capacity, two of which would be for handicapped parking. A gate was to be constructed at the existing driveway entrance to the property on West 31st Street (a one-way street) which would be closed during nonbusiness hours to prevent access by people having no business at the funeral home. A 20 foot curb cut for a driveway had been proposed on Avenue C and provision made for limiting access during nonbusiness hours with a *139 chain. The ordinance allowed a 10 foot curb cut in a residential zone.
Because the parking area had to be lighted under the city ordinance, the applicant had originally proposed that the lights would be on 20 to 25 foot poles and shielded so as not to shine on the objecting neighbor's property. The objectors expressed doubts over the efficacy of the shields. They also complained that the present shrubbery would be cut down[4] with no provisions for a privacy fence.
After a contested hearing the application, as modified, was approved. The Board's first resolution of November 17, 1980 specifically referred to the ordinance sections[5] cited by the zoning officer which related to the bulk requirements challenged by the principal objector, the plaintiff herein. In addition, that resolution indicated that there were special reasons for a use variance under N.J.S.A. 40:55D-70d.
The objector appealed to the Council on February 25, 1981. The Council affirmed the variance with certain modifications which required that the applicant "include in its present plans an entrance to the parking lot on West 31 Street and an exit requiring a right hand turn only on to Avenue C with signs clearly indicating the above requirements" and that it "replace the existing cyclone fence around its property with a privacy fence."
*140 Plaintiff challenged the variance by instituting suit in lieu of prerogative writs on April 6, 1981. On the October 27, 1982 return date of the order to show cause, the judge remanded the matter for the first time to the Board and the Council to make specific findings of fact based on the record because he found the approving resolutions deficient. When the matter was again heard by the court, the findings were still found legally insufficient and the matter was once again remanded for findings by order of January 7, 1983.
The Board and Council thereafter considered the matter and adopted resolutions in accordance with the judge's order. The final approval of the variance by the Board on January 17, 1983, and affirmed as modified by the Council on January 21, 1983, authorized a 15 foot curb cut and required the lighting to be on 48 inch stanchions instead of overhead poles. The trial judge found these findings sufficient and concluded that the grant of the variance, based on these findings, was not arbitrary, capricious or an abuse of discretion.

I
The parties participating in this appeal have treated the variance application as essentially one for a use variance for a parking lot under N.J.S.A. 40:55D-70d. Although the application may be so viewed, there was no change to the pre-existing funeral home use which had been authorized by ordinance 30 years before the applicants sought the current variance. The property was to continue to be so used, but with on-site parking. Authority was being sought to increase the parking area to what might have been considered an accessory use.[6] The application could also be considered an expansion of a *141 nonconforming use, although the testimony was to the effect that no expansion of the number of funerals at the funeral home was expected.
In any event, whether we consider this as a use variance application, an accessory use, or an expansion of a nonconforming use, we are satisfied that there were sufficient reasons to support the Council's grant of the variance for parking facilities for 13 vehicles. In that regard we are satisfied, as was the trial judge, that the findings and conclusions of the Council are supported by the record, and the actions were neither arbitrary, capricious nor an abuse of discretion. Evesham Twp. Bd. of Adjustment v. Evesham Twp. Council, 86 N.J. 295, 302 (1981). Sufficient special reasons existed for the variance, and it could be granted here without substantial detriment to the public good and without substantially impairing the intent and purpose of the zoning plan. In Wajdengart v. Broadway-Thirty-Third Corp., 66 N.J. Super. 346, 350 (App.Div. 1961), we held that the effect of off-street parking vis-a-vis decreasing traffic congestion is often de minimis or nonexistent. We noted there that "if, however, the findings or the evidence indicate that the benefit conferred upon the surrounding area clearly preponderates in favor of the variance, the variance should be granted." Id. at 353.
The Board here found the elimination of dangerous and hazardous traffic conditions and the alleviation of parking congestion in the area were sufficient special reasons. Under our zoning statute traffic conditions and congestion can be taken into account when they will have a significant impact on the community. Cf. N.J.S.A. 40:55D-2h; Tidewater Oil Co. v. Mayor & Council of Carteret, 44 N.J. 338, 345 (1965); Bogert v. Washington Twp., 25 N.J. 57, 65 (1957). We conclude that the flow of traffic around the area in which this funeral home is located and the elimination of dangerous and hazardous traffic conditions tend to advance the purposes of zoning. See Kohl v. Fair Lawn, 50 N.J. 268, 276 (1967); Yahnel v. Jamesburg Bd. *142 of Adjustment, 79 N.J. Super. 509, 517 (App.Div. 1963), certif. den. 41 N.J. 116 (1963).
Our thorough review of the record also satisfies us that the benefit conferred upon the surrounding area preponderates in favor of the variance. The elimination of congestion and the problems pertaining to funeral processions advance public safety concerns and satisfy certain of the objectives set forth in N.J.S.A. 40:55D-2h. See Mistretta v. City of Newark, 33 N.J. Super. 205, 215-216 (App.Div. 1954). We noted in Suesserman v. Newark Bd. of Adjustment, 61 N.J. Super. 28, 34 (App.Div. 1960):
Whether off-street parking presents a "special reason" for a variance is not the subject of pragmatic determination. That it may not in one case furnish this reason for variance is not to say that it cannot suffice for such purpose in any case. Determination may not be thus capsulated, for as was said in Grimley v. Ridgewood Village, 45 N.J. Super. 574 (App.Div. 1957), the propriety of the grant of a variance depends upon the facts in each case.
We are satisfied that under the facts of this case the trial judge correctly held that a special reason was proven and that the governing body did not err in granting the variance. Accordingly, we affirm that aspect of the determination.

II
We turn next to the issue of whether the record warrants bulk variances from the cited sections of Bayonne's zoning ordinance. Subsection 22-6.22 of Bayonne's ordinance requires that "Whenever the Board of Adjustment grants a use variance ... the variance shall comply with all height and yard requirements of the zone districts where the variance is requested." The zoning officer's June 4, 1980 denial letter referred to the implicated sections. Plaintiff raised the issue of potential bulk restriction violations at the hearing before the Board. He argues that the applicants had not made an application for the necessary bulk variances required under N.J.S.A. 40:55D-70c (hereinafter "subsection c"), and the Board made no finding of hardship. The argument that no application was made for *143 relief from the bulk provisions of the ordinance does not appear accurate. The June 4, 1980 denial of the building permit cites and refers to the specific ordinance provisions which would have been violated by the proposed parking lot. That letter was attached to the zoning application which was not submitted under any specific provision of the Municipal Land Use Act. N.J.S.A. 40:55D-1, et seq. In addition to the use variance the Board in its November 17, 1980 resolution not only effectively granted the bulk variances from the pertinent restrictions based on the applicant's parking area proposal, but also in conclusory manner had recited: "4. The denial of the application would result in unnecessary hardship to the applicant." See Commons v. Westwood Bd. of Adjustment, 81 N.J. 597, 608-609 (1980). The Council had modified and affirmed that approval.
The governmental respondents conceded in their brief that no evidence was presented regarding bulk variances and argue that this was because a subsection c variance was never requested. This argument is somewhat shortsighted because the Board has a duty, as has the local zoning officer, to take cognizance when bulk variances are required. This is especially true where, as here, there was testimony presented to the Board of a number of potential bulk restriction violations. The objector argued before the Board that the plan violated the following bulk restrictions: (1) 22:10.1(e), requiring that curbs for parking areas be within five feet from the fence; (2) 22:10.1(h), requiring that curb cuts be at least 50 feet from the nearest residence; (3) 22:10.1(d), requiring privacy fencing, and (4) 22:10.4, requiring curb cuts be less than 10 feet.
The trial judge held that "it was unnecessary that there also be a separate hardship application to cover the bulk variance requirements," concluding that the bulk provisions of the ordinance were subsumed in the approval of the use variance. He relied on Kessler v. Bowker, 174 N.J. Super. 478 (App.Div. 1979), certif. den. 85 N.J. 99 (1980), which said in pertinent part:

*144 The trial judge also noted that while there was testimony of hardship before the board of adjustment, he was satisfied that the variance was not granted on that ground. Furthermore, with respect to plaintiff's argument that the proofs fell short of satisfying the statutory prerequisites for a "c" variance, he responded that the granting of the variance under subsection "d" for special reasons entitled Bowker to build in violation of the side yard parking and bulk restrictions. He determined that a finding of special reasons negated the need to proceed under subsection "c" of the statute.
Plaintiff's first allegation of error is that the township governing body could not reasonably conclude from the evidence before it that a special reason existed for the granting of the variance sought under N.J.S.A. 40:55D-70(d) or (c). As a collateral argument, he also asserts the court erred in holding that when a municipal governing body has before it the proposed plans of an applicant who is seeking both a "c" and "d" variance and determines to grant the "d" variance, the "c" variance is granted with little further consideration.
We disagree with plaintiff's contentions. * * * [Id. at 484.]
The record supports the determination of the municipal authorities to authorize a curb cut on Avenue C to facilitate funeral processions. The ordinance said: "h. Each entrance to and exit from the parking lot shall be at least 50 feet distant from any adjacent property located in any residence."[7] The entire curb area involved on that street only amounted to 50 feet and as a practical matter, it would be impossible to comply with that ordinance provision. Hence, the grant of a variance in that respect clearly was for practical reasons. Although curb cuts in residential zones were limited to 10 feet under section 22-10.4 of the ordinance, the requested 20 foot curb cut was limited to 15 feet and was located as far as possible from the neighboring residential property.[8] Under the final municipal approval signs were to be erected prohibiting both entrance from Avenue C and left-hand turns on exit to that street. The lighting was modified from the proposed erection of 20 or 25 *145 foot poles to lights on 48 inch stanchions. Clearly that was for the benefit of an objecting landowner and was to eliminate or minimize any intrusion from the use of the lights at night during the limited hours that the funeral home operated for business. Likewise, the requirement for a privacy screen was also added for the benefit of the neighboring property.
While we do not hold that in every use variance application the bulk requirements of the ordinance are subsumed in the grant of a use variance, we conclude here that the factual findings of the Board and the governing body after the second remand by the trial judge are sufficient, and that under the circumstances of this case those deviations from the ordinance were necessarily included in the grant of the variance for the parking lot. We are satisfied that this occurred here for several reasons.
The grant of a variance under subsection c is authorized:
Where by reason of exceptional narrowness, shallowness or shape of a specific piece of property, or by reason of exceptional topographic conditions, or by reason of other extraordinary and exceptional situation or condition of such piece of property the strict application of any regulation pursuant to article 8 of this act would result in peculiar and exceptional practical difficulties to, or exceptional and undue hardship upon the developer of such property, ... [N.J.S.A. 40:55D-70c].
Thus, a variance can be granted not only under conditions of undue hardship, but where there are practical problems by virtue of the "exceptional situation or condition" of the property. There were a number of practical problems associated with the location of the funeral home. For instance, patrons were forced to double park in the street, and it was commonplace for the funeral procession to line up on the street, sometimes in the wrong direction. The width of the streets, the traffic congestion in the area and the location of the property created exceptional practical difficulties warranting the grant of the particular bulk variances. The requested curb cut on Avenue C, placement of the curb cut and the parking in the lot next to the existing funeral home constituted an integral proposal whose approval was intended to improve the traffic situation. *146 Hence, although we might well have affirmed just the use variance and remanded once more for findings based on the criteria in subsection c,[9] we are satisfied that the application as finally approved by the Board and Council warrant the placement and size of the curb cut, the layout of the parking area, the modified lighting, fencing and screening, as well as the other provisions of the plan as approved.
Under the particular circumstances here we agree with the trial judge's conclusion that the bulk provisions were subsumed in the grant of this variance application. We are thus satisfied here that there is sufficient basis to affirm the trial judge notwithstanding the lack of findings of the Board and Council with respect to the bulk variances, in part because these variations were presented to and considered by the Board. Indeed, some of them were the subject of modifications of the original approval.
The determination of the trial judge is affirmed.
NOTES
[1] Although the respondents who applied for the variance are obviously interested in the outcome of this appeal, they have elected not to file a responsive brief, and hence they have provided no assistance to the court in reviewing this matter. Council and the Board are represented by the same counsel. Numerous ethics opinions have indicated this is inappropriate because there is an appeal right from the Board to the Council.
[2] It could be argued that parking is an accessory use to a funeral home. See e.g., State v. P.T. & L. Construction Co., 77 N.J. 20, 26-30 (1978); United Advertising Corp. v. Metuchen Borough, 42 N.J. 1, 6-7 (1964); State v. Gargiulo, 103 N.J. Super. 140, 147-148 (App.Div. 1968).
[3] Although the cover sheet of the zoning application (without attachments) was included in the record originally submitted to us, the parties who have filed briefs in this matter did not include a copy of the complete application or a copy of the complete zoning ordinance. We do note that respondents' appendix appears to be an unnecessary duplication (see R. 2:6-3) of appellant's appendix which is wasteful of time and money. A joint appendix could have been utilized. R. 2:6-1(d).
[4] Of course, no landowner can be forced to maintain a park-like setting for his neighborhood. See Sheerr v. Evesham Tp., 184 N.J. Super. 11, 56 (Law Div. 1982); see also Morris County Land Improvement Co. v. Parsippany-Troy Hills Tp., 40 N.J. 539, 554-558 (1963).
[5] The resolution recites that the applicant "made an application to the Board of Adjustment ... for a variation from the requirements of the Chapter XXII, Zoning Subsection 22-9(e), 22-10.1, 22-10.4 and 22-14.1 of the Revised General Ordinances ... and further pursuant to N.J.S.A. 40:55D-70`d' so as to construct and install a parking lot and driveway at the premises commonly known as 691 Avenue C, Bayonne, New Jersey...."
[6] The applicants might have been able to utilize portions of the other two lots for parking merely as an accessory use subject to the ordinance and any necessary bulk requirements. As an accessory use parking would be for the funeral home operation and for the residences maintained on the property. See footnote 1, supra.
[7] Section 22:10.1(h) of the Bayonne zoning ordinance.
[8] The Bayonne ordinance in its entirety was not submitted to us. It is not clear whether the parking lot provisions applied to all parking lots or to commercial lots or whether the 50 foot provision was limited to such lots. For instance, if in fact two single-family residences with 25 foot frontage were constructed on the 50 feet along Avenue C and off-street parking was required, as it appears, then two curb cuts would be necessary.
[9] See Bern v. Fair Lawn, 65 N.J. Super. 435, 446-447 (App.Div. 1961).