685 F.2d 1142
 LEAGUE TO SAVE LAKE TAHOE, a non-profit corporation, and
James L. Porter, Jr., Plaintiffs-Appellees,
v.
CRYSTAL ENTERPRISES, a partnership, and County of Washoe, a
political subdivision of the State of Nevada,
Defendants-Appellants.
 No. 80-4377.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 11, 1982.
Decided Aug. 31, 1982.
 
 Frank Cassas, Hill, Cassas, DeLipkau & Erwin, Reno, Nev., for defendants-appellants.
 Laurens H. Silver, San Francisco, Cal., argued, for plaintiffs-appellees; Oliver C. Custer, Reno, Nev., on brief.
 Appeal from the United States District Court for the District of Nevada.
 Before FLETCHER, POOLE and CANBY, Circuit Judges.
 FLETCHER, Circuit Judge.
 
 
 1
 This suit concerns the construction of a parking garage/hotel tower at the Crystal Bay Club on Lake Tahoe. The plaintiffs contend that construction ceased on this project for periods of time sufficient to make the defendants subject to the requirements of the Tahoe Regional Planning Agency's Land Use Ordinance. The defendant, Crystal Enterprises, claims that it is exempt from the requirements of the ordinance under a grandfather clause, and alternatively argues that it has a vested right to complete the project as planned. The district court, 490 F.Supp. 995, found for the plaintiffs. Defendants appeal from that judgment and order. We note jurisdiction under 28 U.S.C. § 1291 (1976) and affirm.
 
 
 2
 * FACTS
 
 
 3
 In 1970, the predecessors in interest of Crystal Enterprises began construction of a fifteen story hotel/parking garage complex at Crystal Bay, Nevada. This complex was to be an addition to the Crystal Bay Club casino. The Washoe County, Nevada, building department granted a building permit for the construction on August 20, 1970. By the end of June, 1971, the parking garage and the structural portion of three floors of the hotel tower were completed. Construction ceased at this point. No significant work was done on the project again until April, 1975, when construction re-commenced.
 
 
 4
 The Tahoe Regional Planning Agency's Land Use Ordinance (LUO) became effective on April 11, 1972. Under the ordinance, the project at Crystal Bay is a nonconforming use. See LUO § 7.12(15). However, the ordinance contains a grandfather clause, LUO § 9.11, which exempts from the requirements of the ordinance existing uses and projects "upon which construction has commenced as allowed by ... permit prior to February 10, 1972...." LUO § 9.11. The exemption does not apply, however, if "any such use ceases for a period of one (1) year." Id.
 
 II
 ANALYSIS
 A. Land Use Ordinance § 9.11
 
 5
 Relying on the grandfather clause, LUO § 9.11, appellant maintains that its unfinished hotel is not subject to review by the Tahoe Regional Planning Agency (TRPA). LUO § 9.11 provides as follows:
 
 9.11 Existing Uses and Structures
 
 6
 Uses of land and structures that do not conform to the regulations established by this Ordinance and which lawfully existed on February 10, 1972, or which are to be created in connection with structures for which a valid permit was issued on or before February 10, 1972, and upon which construction has commenced as allowed by such permit prior to February 10, 1972, may be continued, transferred or sold, provided, however, in the case of a use to be created it shall occupy no greater area than planned at the time such permit was issued. If any such use ceases for a period of one (1) year, subsequent use of such land shall be in conformity with the regulations contained in this Ordinance.
 
 
 7
 (emphasis in original).
 
 
 8
 The difficulty lies in the interpretation of the phrase "any such use." Both sides agree if use of a completed structure ceases for a period of one year or more, that the protection afforded by the grandfather clause to the nonconforming use will be lost. Defendant's position is that the nonconforming use classification can only be lost once the structure is completed, used for its purpose, and then that use is abandoned for more than a year. The plaintiffs' contention, however, is that the cessation of construction for a period of one year or more forfeits the exemption from TRPA review provided by LUO § 9.11. We conclude that the latter interpretation is the correct one.
 
 
 9
 Questions in regard to construction of zoning ordinances are matters of law. Interpretation of LUO § 9.11 is a question of federal law. League to Save Lake Tahoe v. B. J. K. Corp., 547 F.2d 1072, 1075 (9th Cir. 1976). There is, however, no federal law of zoning. We must therefore rely on state court interpretations for guidance.
 
 
 10
 Zoning laws, not unlike other statutes, are to be reasonably construed in terms of legislative intent, objectives sought, and the accepted usage of the language contained in the ordinance. See City of Norwalk v. Auction City, Inc., 186 Cal.App.2d 287, 8 Cal.Rptr. 781 (1960). In many cases the language is so precise and explicit that no interpretation is required. When interpretation is necessary, specific rules of construction that have evolved over the years are applied. They are not always mutually consistent. The ordinance must be construed in its entirety. 6 Powell on Real Property P 872(4) (1981). Ambiguities are normally resolved in favor of the landowner. State ex rel. Standard Mining & Development Corp. v. City of Auburn, 82 Wash.2d 321, 326, 510 P.2d 647, 651 (1973); Murphy v. S. A. Hutchins & Associates Construction Co., 263 Or. 245, 247, 501 P.2d 1273, 1275 (1972); Kubby v. Hammond, 68 Ariz. 17, 198 P.2d 134, 138 (1948). There are, however, jurisdictions which permit liberal construction in favor of the municipality. Place v. Board of Adjustment, 42 N.J. 324, 200 A.2d 601, 603 (1964). Provisions pertaining to nonconforming uses are normally construed in favor of discontinuance. See, e.g., Kelly Supply Co. v. Anchorage, 516 P.2d 1206, 1210 (Alaska, 1973).
 
 
 11
 A nonconforming use is a lawful use in existence on the effective date of the zoning restriction and continuing thereafter in nonconformance to the ordinance. 6 Powell on Real Property P 871(1)(a) (1981). A provision permitting continuance of a nonconforming use is ordinarily included in zoning ordinances because of the hardship and doubtful constitutionality of compelling the immediate discontinuance of nonconforming uses. However, the general purpose of zoning ordinances is to achieve conformity, eventually terminating all nonconforming uses. Zoning ordinances ordinarily establish separate areas, locating in each the appropriate uses, and forbidding other uses that will tend to impair the development and stability of the area for appropriate uses. The public welfare is considered in the context of the objectives of the zoning and the effect of the zoning on all of the property within any particular district. It is not contemplated that pre-existing nonconforming uses are to be perpetual. "The presence of any nonconforming use endangers the benefits to be derived from a comprehensive zoning plan." City of Los Angeles v. Gage, 127 Cal.App.2d 442, 459, 274 P.2d 34, 43 (1954).
 
 
 12
 Every zoning ordinance including those adopted by TRPA involves some impairment of vested rights either by restricting prospective uses or by prohibiting the continuation of existing uses, because it affects property already owned by individuals at the time of its enactment. The distinction between an ordinance restricting future uses and one requiring the termination of present uses is merely one of degree. The general policy of the courts is to permit municipalities to impose various restrictions and limitations on nonconforming uses. See, e.g., Ringtown Enterprises, Inc. v. Borough of Ringtown, 34 Pa.Cmwlth. 349, 383 A.2d 1292 (1978); Kelly Supply Co. v. Anchorage, 516 P.2d 1206. Nonconforming uses represent conditions which should be reduced to conformity as quickly as is compatible with justice. The unique and unsurpassed beauty of the bi-state Tahoe Basin and the acute ecological threats posed by the pressures of urbanization led to a congressionally authorized compact concurrently enacted by the California and Nevada legislatures establishing a Tahoe regional agency, armed with power to develop and enforce a land use plan for the entire basin. Pub.L.No.91-148, 83 Stat. 360 (1969); Cal.Gov.Code §§ 66801, 67000 et seq. (West Supp.1981), Nev.Rev.Stats. §§ 277.190, .200 (1981); see also Raley v. California Tahoe Regional Planning Agency, 68 Cal.App.3d 965, 137 Cal.Rptr. 699, 708 (1977). The plan is threatened by additional construction or continued use of "high-rise" buildings such as the one at issue in this case. See LUO § 7.12(15). The ordinances at issue should not be given an interpretation which fosters an indefinite continuation of a nonconforming use. Furthermore, there is no reason for treating projects under construction less stringently than completed structures. In fact, it might be far more difficult and expensive to modify an existing structure than to modify a project in the course of construction. Defendants' interpretation of the statute results in an unreasonably favorable status for projects under construction. Such a result is not consonant with either the intent of the ordinance or common sense.
 
 
 13
 We conclude that within the meaning of LUO § 9.11 construction, itself, can be a nonconforming use, the exemption for which can be lost if construction ceases for a period of one year, and that construction ceases on a project if no substantial work is done in furtherance of the original permit or of valid renewals of the original permit.
 
 
 14
 Generally, the right to a nonconforming use exists only so long as the use continues to exist. A nonconforming use may terminate in one of several ways. These include amortization, abandonment, nonuse or discontinuance for a prescribed period, and voluntary or involuntary destruction. 6 Powell on Real Property P 871(3)(f)(i). Some zoning ordinances provide that if a nonconforming use is "discontinued" for a designated period of time it may not be resumed. The apparent objective of a provision using the term "discontinued" or "ceased" is to avoid the problem of having to prove intent to abandon a nonconforming use. See, e.g., C. F. Lytle Co. v. Clark, 491 F.2d 834, 837 (10th Cir. 1974).
 
 
 15
 Appellants assert that despite the presence in the ordinance of a definite period of discontinuance of a nonconforming use, intent to abandon must still be proved. We disagree. LUO § 9.11 presumes abandonment after the designated period of non-use has passed. "A nonconforming use may be terminated by ordinance after the lapse of a reasonable period of time regardless of whether the property owner intends to abandon that use." See Wyatt v. Board of Adjustment-Zoning, 622 P.2d 85, 86 (Colo.App.1980).
 
 
 16
 The district court found that no substantial work had been done on the Crystal Bay project for periods exceeding one year. This finding is not clearly erroneous. Appellant, Crystal Enterprises, therefore, cannot qualify for exemption under LUO § 9.11. It may not re-commence construction without TRPA review.
 
 B. Vested Rights
 
 17
 Crystal Enterprises' assertion that even if LUO § 9.11 is construed to mean that it has lost the protection of the grandfather clause, it still cannot be made subject to TRPA's authority because it has a vested right to complete the project, is not ripe for adjudication. Crystal Enterprises has not been denied permission to continue the project. The fact that the project is no longer protected by the grandfather clause of LUO § 9.11 merely means that it is subject to TRPA review. If Crystal Enterprises is denied permission to continue the project, appellant may have a ripe claim regarding possible vested rights. See, e.g., United States v. Byrd, 609 F.2d 1204, 1211 (7th Cir. 1979).
 
 
 18
 AFFIRMED.