**WILLIAM G. TADLOCK CONSTRUCTION,**
Petitioner,

v.

**UNITED STATES DEPARTMENT OF DEFENSE,** Respondent.

*No. 95–70146.*

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1996.

Decided Aug. 6, 1996.

---

Craig A. Ramseyer and Kevin Bond, Ramseyer & Dunn, San Diego, California, for petitioner.

Lowell V. Sturgill, Jr., United States Department of Justice, Washington, D.C., for respondent.

Petition to Review a Decision of the Defense Logistics Agency.

Before: WIGGINS, THOMPSON, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

William G. Tadlock Construction (Tadlock Construction) was ordered by the Defense Logistics Agency (DLA) to pay Michael S. McGill, a former employee, $6,400 in back pay for retaliating against McGill after he made protected disclosures to Navy officials. The DLA's authority to take this action came from former 10 U.S.C. § 2409a (1988 ed. Supp. V, 1993) (repealed 1994). In this petition for review, Tadlock Construction argues that: 1) the DLA's action was not permitted under § 2409a because that section does not apply to nonappropriated fund (NAF) contracts; 2) the DLA lacked jurisdiction over McGill's complaint because it was not timely filed; and 3) the DLA lost jurisdiction over McGill's complaint because it failed to meet a number of statutory deadlines.

We deny the petition.

## BACKGROUND

### Statutory Background

This case concerns former 10 U.S.C. § 2409a, which was repealed on October 13, 1994. The parties agree that § 2409a controls this case because all of the relevant actions occurred while it was in effect. The statute prohibited defense contractors from:

discharging or otherwise discriminating against any employee with respect to such employee's compensation or terms and conditions of employment because the employee (or any person acting pursuant to a request of the employee) discloses to an appropriate Government official information concerning a contract between the defense contractor and the Department of Defense which the employee reasonably believes evidences a violation of any Federal law or regulation relating to Department of Defense procurement or the subject matter of the contract.

10 U.S.C. § 2409a(b) (1988 ed. Supp. V, 1993) (repealed 1994).

Under the statute, defense contractor employees who believed that they had been retaliated against could file a complaint with the Secretary of Defense who would investigate the complaint and could award back pay to wrongfully discharged employees. See 10 U.S.C. § 2409a(c)(5) (1988 ed. Supp. V, 1993). The Secretary delegated his authority to adjudicate the complaints to the Director of the DLA, 48 C.F.R. 203.7104 (1994), and his authority to investigate complaints to the Department of Defense (DoD) Inspector General (IG), 48 C.F.R 203.7105 (1994).

### Factual Background

In 1992, Tadlock Construction was awarded a nonappropriated fund (NAF)[1] contract by the Department of the Navy to build the Consolidated Club—a recreational facility—at the Navy Submarine Base, San Diego, California. The Navy insisted that Tadlock Construction employ a full-time Contract Quality Control Representative (CQCR) to ensure that the building was constructed in compliance with the contract. Tadlock Construction hired McGill to be the CQCR and the project architect.[2]

McGill observed that Tadlock Construction was using screws in lieu of welds in some parts of the building and believed that this

1. Nonappropriated funds consist of cash and other assets received by nonappropriated fund instrumentalities (military retail stores, gas stations, barber shops, beer bars, etc.) from sources other than monies appropriated by the Congress of the United States. NAFs are government funds but are separate and apart from funds recorded in the books of the Treasurer of the United States. DoD Directive No. 1015.1, encl. 2 (August 19, 1981).

2. As the project architect, McGill completed the construction drawings, including the "as built" drawings. The Navy required Tadlock Construction to submit "as built" drawings before the Navy would accept the building.

practice violated the contract. In October of 1992, he informed Mr. Tadlock of his concerns and began to keep a personal log of the deviations. Mr. Tadlock refused to alter the connections and a portion of the building's framework was covered with stucco and drywall, thus hiding the screws.

In early November 1992, McGill informed Mr. Tadlock that he was planning on taking a three week vacation starting at the end of the month.

On November 6, 1992, McGill gave copies of his log to the Navy, thus revealing the alleged contract deviations. On November 23, 1992, Navy officials contacted Mr. Tadlock and discussed the deviations that McGill had reported. On November 24, Tadlock Construction informed the Navy that it was removing McGill as the CQCR and assigning him to project architect duties full-time. McGill's salary was unaffected by the transfer. Tadlock Construction hired Ron Price as its new CQCR.

On January 8, 1993, Tadlock Construction terminated McGill because he had finished all of his project architect duties. Price was terminated by Tadlock Construction on March 5, 1993 because the Consolidated Club was almost completed, and Tadlock Construction no longer required a CQCR.

On April 20, 1993, the DoD IG received a letter from McGill alleging that he had been transferred and terminated because of his disclosures to the Navy. The DoD IG forwarded the letter to the DLA for review. On May 18, 1993, the DLA sent McGill a letter advising him that he needed to refile his complaint to make it comply with § 2409a's formal requirements.

McGill resubmitted his complaint on June 12, 1993. This complaint is almost identical to the original; the only material differences are: 1) it states that Tadlock Construction did not have an internal grievance program; and 2) it includes the sentence: "I certify under penalty of perjury that the above complaint is true and correct."

The DoD IG investigated McGill's complaint and issued a report which found that Tadlock Construction had reprised against McGill by removing him from the CQCR position. However, the IG also found that the "termination of Mr. McGill's employment was not reprisal, but would have occurred absent his protected disclosure." Notwithstanding this last finding, the IG stated:

> We conclude that even had Mr. McGill continued in his dual position as CQC Representative and Project Architect, his employment, like that of Mr. Price, would have been terminated when the construction job was completed. However, absent his protected disclosure, we further conclude Mr. McGill would have continued in the employment of Tadlock until March 5, 1993, when Mr. Price's employment with Tadlock Construction was completed.

On December 5, 1994, the DLA's General Counsel issued an order that adopted the IG's findings and required Tadlock Construction to pay McGill $6400—the salary he would have received if he had worked until March 5th.

## STANDARD OF REVIEW

 We review the factual findings of an agency for substantial evidence. *Hawaii Helicopter Operators Ass'n v. FAA,* 51 F.3d 212, 215 (9th Cir.1995). In reviewing an agency's interpretation of a statute, we must reject those constructions that are contrary to clear congressional intent or frustrate the policy that Congress sought to implement. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781–82 n. 9, 81 L.Ed.2d 694 (1984).

### I. Does former 10 U.S.C § 2409a apply to nonappropriated fund contracts?

 Tadlock Construction claims that the DLA's order is legally void because § 2409a and the regulations promulgated thereunder are not applicable to NAF contracts. The express language of the statute refutes this argument.

Under § 2409a, any employee of a "defense contractor" may file a complaint with the Secretary. 10 U.S.C. § 2409a(c)(1). The term "defense contractor" is defined by the statute as "any employer providing goods or services, under contract, to the Department

of Defense." 10 U.S.C. § 2409a(e)(2). Here, Tadlock Construction was a "defense contractor" because it signed a contract with the Navy to erect a building. McGill was an employee of Tadlock Construction. Section 2409a applies.[3]

## II. Did the DLA lack jurisdiction over McGill's complaint because it was not timely filed?

■ Tadlock Construction claims that the DLA lacks jurisdiction over McGill's complaint because it was not filed within 180 days as required by § 2409a(c)(1).[4] To resolve this issue, it is necessary for us to determine when § 2409a's 180-day limitations period started, whether substantial evidence supports the DLA's finding that the transfer was retaliatory, and whether McGill's defective first complaint tolled the limitations period until he sent his second complaint.

### A. When did the clock start?

The DLA argues that the 180-day clock started on January 8, 1993, when McGill was terminated. Tadlock Construction disputes that it ever took any retaliatory action against McGill, but if it did, the 180-day clock started on November 24, 1992, when it reassigned McGill from CQCR to Project Architect.

In essence, the DLA's argument that McGill's termination was retaliatory and therefore the clock started on January 9th is this: Absent any retaliatory action, the position of Project Architect would have ended on January 9, 1993, and the position of CQCR would have ended on March 5, 1993. McGill's transfer from CQCR to Project Architect was retaliatory. Because this trans-fer led to an earlier termination, the termination should be considered retaliatory too.

Analogous logic was rejected by the Supreme Court in *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). There, the Court considered the case of a professor who was denied tenure and eventually terminated. The professor alleged that the denial of tenure was motivated by racism and filed a complaint with the Equal Employment Opportunity Commission (EEOC) after his non-tenure contract expired. His complaint would have been timely under Title VII if the limitations period began to run from the date of termination, but untimely if the limitations period started when he learned of the tenure decision. The Court held that the period began to run when Ricks learned of the tenure decision because that was the only act of alleged discrimination.

As in *Ricks*, the illegal conduct by Tadlock Construction against McGill—the retaliatory transfer—occurred some time before the termination. In both cases, the termination was not itself unlawful, merely the inevitable consequence of the earlier unlawful action. Moreover, McGill, like Ricks, could have filed a complaint at the time the unlawful action occurred, and did not have to wait until termination to seek redress. *See* 10 U.S.C § 2409a(c)(1) (1988 ed. Supp. V, 1993) (repealed 1994). Therefore, we will follow *Ricks* and hold that the clock started at "the time of the [unlawful] acts, not upon the time at which the consequences of those acts became most painful." *Id.* at 258, 101 S.Ct. at 504 (quoting *Abramson v. University of Hawaii*, 594 F.2d 202, 209 (9th Cir.1979)). The starting date is November 24, 1992, when Ricks was transferred.

---

**3.** Tadlock Construction mistakenly cites *Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37 (2nd Cir. 1991), and *Clark v. Army & Air Force Exch.*, 57 M.S.P.R. 43 (M.S.P.B.1993) in support of its argument. Neither of these cases is applicable here. *Mignogna* holds only that a NAF Instrumentality is not an "officer" or a "federal agency" under 28 U.S.C. § 1442(a)(1). *Clark* stands only for the proposition that a NAF employee is not an "employee" for the purposes of Title V.

**4.** Former § 2409a(c)(1) states:

Any employee of a defense contractor who believes that he or she has been discharged or otherwise discriminated against by a defense contractor in violation of the regulations promulgated under subsection (b) may file with the Secretary a complaint alleging discharge or discrimination. Any complaint may not be filed more than 180 days after the later of the date on which the violation is alleged to have occurred or was discovered.

**1340**

B. *Does substantial evidence support the DLA's finding that the transfer was retaliatory?*

■ Tadlock Construction contends that there is no substantial evidence to support the DLA's determination that McGill's transfer was retaliatory. Tadlock Construction alleges that McGill's vacation forced it to hire a replacement CQCR and that McGill's disclosure to the Navy had nothing to do with his transfer.

We have inspected the record and have found ample support for the DLA's finding. For example, Ron Price, McGill's replacement, testified that when he was hired he thought that he would just be filling-in for McGill. Price was not told he would be the permanent replacement until *after* Mr. Tadlock learned that McGill had talked to the Navy. Moreover, Tadlock Construction could have refused to allow McGill to go on his Australian vacation and discharged him if he did so without permission. This did not occur. It was only after the Navy and Tadlock Construction scheduled a meeting to discuss the deviations reported by McGill that Tadlock Construction reassigned McGill to the project architect position full-time. Therefore, we hold that there is substantial evidence to support the DLA's determination that McGill's transfer was retaliatory.

C. *Was McGill's Complaint filed on time?*

■ Former § 2409a stated that a "complaint may not be filed more than 180 days after the later of the date on which the violation is alleged to have occurred or was discovered." McGill first attempted to file a complaint by a letter received by the DoD on April 20, 1993, 148 days after he was transferred. The DLA concedes that this letter did not comply with all of the requirements of § 2409a(c)(2) and the regulations promulgated under it. McGill later sent an almost identical letter which met all of § 2409a's requirements. The DLA received this letter on June 21, 1993, 210 days after McGill was transferred.

Tadlock Construction argues that the DLA lacked jurisdiction to consider McGill's complaint because McGill's first letter (which was filed within the 180 days of the retaliatory transfer) did not include a certification statement, and a sentence stating that Tadlock Construction did not have a grievance procedure. The DLA rejected this argument and held that 180–day period is merely an administrative statute of limitations that is subject to equitable tolling, and in this case McGill's first letter tolled the statute until his second letter arrived.

There are no reported cases explaining whether the 180–day filing period in § 2409a(c)(1) is a jurisdictional prerequisite or merely the equivalent of a statute of limitations. If the filing period is jurisdictional, the DLA did not have power over McGill's complaint because it cannot unilaterally create jurisdiction where Congress has not. *See Cooper v. Bell,* 628 F.2d 1208, 1212 (9th Cir.1980). However, if the filing period is an administrative statute of limitations, equitable tolling might have extended the period in which McGill could file a proper complaint.

We have looked at statutes similar to § 2409a which contain filing periods and found that courts treat them as administrative statutes of limitations subject to equitable tolling. *See, e.g., Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990) (Title VII actions against federal government); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 392, 102 S.Ct. 1127, 1131–32, 71 L.Ed.2d 234 (1982) (Title VII actions against private employers); *Bouman v. Block,* 940 F.2d 1211, 1220 (9th Cir.) (California's Fair Employment Practices Act), *cert. denied,* 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991). We see no reason to treat the time limits contained in § 2409a differently than those in the cases listed above. Moreover, the time limits contained in former § 2409a are like those imposed on private litigants, and such time limitations are customarily treated as statute of limitations subject to equitable tolling. *See Irwin,* 498 U.S. at 95, 111 S.Ct. at 457. Therefore we hold that the time limitations contained in former § 2409a are administrative statutes of limitation subject to equitable tolling.

■ Here, the DLA's decision to toll the period between the first and second com-

plaint was proper. McGill actively pursued his statutory remedies by filing a complaint, although a defective one, within the time limits of the statute. The omissions in McGill's first complaint were merely technical and were easily corrected. *See Casavantes v. California State University*, 732 F.2d 1441 (9th Cir.1984) (timely filed Intake Questionnaires in conjunction with a subsequently filed certified complaint satisfy the statutory time bar for Title VII claims); *see also* Wright & Miller, *Federal Practice*, Civ. § 1339 at 150 ("[T]he filing of an unverified complaint effectively will commence an action under Rule 3 and toll the statute of limitations"); 27 Fed.Proc., L.Ed. § 62:112 ("Where verification of a complaint is required by rule or statute, any deficiency in that respect may be supplied by way of amendment and is not ground for dismissal"). Therefore, we affirm the DLA's determination that McGill's complaint was timely filed.

### III. Did the DLA lose jurisdiction over McGill's complaint because the DLA missed certain statutory deadlines?

Section 2409a imposes specific deadlines on the DLA after a complaint has been filed: The DLA: (1) *"shall ... complete an investigation of the Complaint within 90 days after the receipt of the complaint ..."*; (2) *"shall* provide a written report of the investigation to ... the defense contractor alleged to have committed the violation" "not later than 30 days after the investigation is completed"; and (3) *"shall* issue an order providing the relief ... or denying the complaint" "within 90 days after providing the report on the results of an investigation of a complaint." 10 U.S.C. § 2409a(c)(4) (emphasis added). Here, the DLA missed all of the listed deadlines.

Tadlock Construction argues that the DLA's failure to follow the statutory time limits deprived it of jurisdiction over McGill's complaint. Tadlock Construction focuses its attention on the word "shall" and contends that such language makes the time limits absolutely mandatory.

Unfortunately for Tadlock Construction, we do not hold administrative agencies to such high standards. "Although the statu-

tory term 'shall' suggests that limits are mandatory, failure of an agency to act within a statutory time frame does not bar subsequent agency action absent *a specific indication that Congress intended the time frame to serve as a bar." Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1400 (9th Cir.1995) (emphasis added) (Endangered Species Act does not proscribe listing species as endangered after passage of statutory time limits); *Brock v. Pierce County*, 476 U.S. 253, 260–65, 106 S.Ct. 1834, 1839–42, 90 L.Ed.2d 248 (1986) (failure of Labor Secretary to act within statutorily mandated 120 days to recover misused funds did not deprive Secretary of the power to act after that time).

Tadlock Construction has not pointed to any language in § 2409a or its legislative history that indicates that Congress intended the statute's time frames to serve as bars to agency action. The statute itself does not specify any consequence for the Secretary's failure to act before the deadlines. *See Idaho Farm Bureau Fed'n*, 58 F.3d at 1400 ("Our conclusion [that the time limit does not bar agency action] is bolstered by the fact that ... the ESA does not provide any consequences for failure to act within the prescribed time."). Moreover, had Tadlock Construction felt prejudiced by the Secretary's delay, it could have filed suit under 5 U.S.C. § 706(1) to compel the Secretary to act. *See Brock*, 476 U.S. at 260, 106 S.Ct. at 1839 ("Where, as here, there are less drastic remedies available for failure to meet a statutory deadline, courts should not assume that Congress intended agency to lose its power to act."). Therefore, we hold that the DLA's failure to meet the deadlines did not cause it to lose jurisdiction.

### CONCLUSION

We deny Tadlock Construction's petition. Section 2409a applies to this action because McGill was an employee of a defense contractor—Tadlock Construction. The 180–day clock began to run upon McGill's transfer. McGill's complaint was timely filed because his first letter tolled the limitations period. Finally, the DLA's failure to meet the statu-

tory deadlines did not deprive it of jurisdiction over this dispute.

**Petition Denied.**