**LAKE TAHOE WATERCRAFT RECREATION ASSOCIATION, et al., Plaintiffs,**

**v.**

**TAHOE REGIONAL PLANNING AGENCY, Defendant,**

**The League to Save Lake Tahoe, Intervenor–Defendant.**

**No. CIV. S–97–2053 FCD DJD.**

United States District Court, E.D. California.

Oct. 28, 1998.

John E. Fagan, Jennifer L. Pruski, Hancock, Rothert & Bunshoft LLP, Tahoe City, CA, Brian A. Kelly, Mert A. Howard, Hancock, Rothert & Bunshoft LLP, San Francisco, CA, for Plaintiffs National Marine Manufacturers Ass'n and Personal Watercraft Industry Ass'n.

Lawrence L. Hoffman, Hoffman Law Offices, Tahoe City, CA, for All Other Plaintiffs.

E. Clement Shute, Ellison Folk, Robert S. Perlmutter, Shute, Mihaly & Weinberger, San Francisco, CA, Daniel P. Selmi, Los Angeles, CA, for Defendant Tahoe Regional Planning Agency.

Stephan C. Volker, Earthjustice Legal Defense Fund, Inc., San Francisco, CA, for Intervenor–Defendant The League to Save Lake Tahoe.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

The Lake Tahoe Watercraft Recreation Association and various watercraft manufacturers, retailers and users bring this action challenging the legality of Tahoe Regional Planning Agency ("TRPA") Ordinance No. 97–12 ("Ordinance"). In particular, plaintiffs challenge the portion of the Ordinance prohibiting the discharge of unburned fuel and oil from the operation of watercraft propelled by carbureted two-stroke engines commencing June 1, 1999.

Plaintiffs' complaint alleges: violations of the equal protection, due process, and commerce clauses of the United States Constitution; an illegal taking; violation of the Federal Aid in Sport Fish Restoration Act; the Ordinance obstructs access to a navigable waterway; failure to comply with various provisions of the Compact; the Ordinance is void for vagueness; and violations of the California and Nevada Constitutions and laws. Defendant TRPA moves for judgment on the pleadings as to the first through fifth and ninth through eighteenth causes of action. Fed.R.Civ.P. 12(c). Intervenor-defendant The League to Save Lake Tahoe ("League")[1] moves to dismiss the first through eighteenth causes of action. Fed. R.Civ.P. 12(b)(6).[2] The League also con-

1. The League's motion to intervene was granted on July 24, 1998.

2. The League also moves to strike certain factual allegations contained in plaintiffs' oppositions to defendants' motions which were not contained in the complaint. Because the court does not rely on any of the allegations which were the subject of the League's motion, the court need not address the merits of the motion.

tends the entire action is barred by the applicable statute of limitations. Defendants' motions are granted; plaintiffs are given leave to file an amended complaint as to certain causes of action.

## BACKGROUND

In 1968, California and Nevada entered into the Tahoe Regional Planning Compact ("Compact") to create a regional agency with extensive powers to regulate and control development within the Lake Tahoe Basin in order to protect the natural resources and ecological balance of the area. *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 507 F.2d 517, 518 (1974), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975). *See also* Cal. Gov.Code §§ 66800, 66801; Nev.Rev.Stat. §§ 277.190–277.220. In 1969, Congress consented to the Compact, pursuant to Article I, § 10, cl. 3 of the United States Constitution.[3] Tahoe Regional Planning Compact, Pub.L. No. 91–148, 82 Stat. 360 (1969).

In 1980, California and Nevada extensively amended the Compact to impose numerous specific mandates on TRPA. Congress consented to the Compact that same year. Tahoe Regional Planning Compact—Consent of Congress, Pub.L. 96–551, 94 Stat. 3233 (1980).[4] The Compact, as amended, directed TRPA to adopt environmental threshold carrying capacities for the region,[5] including standards for water quality, and to implement these environmental standards through agency ordinances rules and regulations. Compact, Art. V(c) & (d), Art. VI(a).

On June 25, 1997, TRPA adopted Ordinance No. 97–12 which, among other things, prohibits "[t]he discharge of unburned fuel and oil from the operation of watercraft propelled by carbureted two-stroke engines [in Lake Tahoe and certain other lakes and waterways]... commencing June 1, 1999."[6] The Ordinance amended an existing TRPA ordinance prohibiting the discharge of toxic or hazardous waste to Lake Tahoe and the Tahoe Region. TRPA Code of Ordinances 81.2.D.

## STANDARD

A complaint will not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that plaintiff can prove no set of facts in support of [his or] her claim that would entitle [him or] her to relief." *Yamaguchi v. Department of the Air Force,* 109 F.3d 1475, 1480 (9th Cir.1997)(quoting *Lewis v. Telephone Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut., Ins. Co.,* 80 F.3d 336, 337–38 (9th Cir.1996).

■ The standard governing a Rule 12(c) motion for judgment on the pleadings is essentially the same as that governing a Rule 12(b)(6) motion. The motion will not be granted if, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *See Hal Roach Studios v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989).

## ANALYSIS

### 1. Statute of Limitations

The League contends that plaintiffs' claims are barred because they failed to commence the instant action within 60 days after final action by TRPA.

---

3. Article I, § 10, cl. 3 of the United States Constitution provides in pertinent part: "No state shall, without the Consent of Congress, ... enter into any Agreement or Compact with another State."

4. Hereinafter, all references to the Compact are to the amended 1980 Compact.

5. "Environmental threshold carrying capacity means an environmental standard necessary to maintain a significant scenic, recreational, educational, scientific or natural value of the region or to maintain public health and safety within the region. Such standards shall include but not be limited to standards for air quality, water quality, soil conservation, vegetation preservation and noise." Compact, Art. II(i).

6. The court's references to the Compact and the Ordinance are proper as plaintiffs' complaint refers to the Compact and Ordinance, the Compact and Ordinance are central to plaintiffs' claim and their authenticity is not questioned. *See Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir.1994). The court has not referenced or relied on TRPA's Environmental Assessment in considering the instant motion.

Pursuant to the Compact, actions "arising out of the adoption or amendment of ... any ordinance or regulation of the agency, ... shall be commenced within 60 days after final action by the agency." Compact, Art. VI(j)(4). The Ordinance's adoption on June 25, 1997 constituted "final action by the agency." Plaintiffs did not commence this action until October 30, 1997, over two months after the expiration of the sixty day period. Plaintiffs respond that TRPA expressly waived the filing deadline on two occasions, and defendants are therefore estopped from asserting a statute of limitations defense. The League does not dispute plaintiffs' assertion that TRPA waived the deadline, but rather, contends that (1) the 60-day period is jurisdictional, and cannot be waived, (2) TRPA lacked the authority to waive the deadline, and (3) TRPA's waiver did not bind the League, and thus, the League is free to raise the statute of limitations as a defense.

 The League is prohibited from raising a statute of limitations defense. An intervenor is limited to the field of litigation open to the original parties; it cannot enlarge the issues tendered by or arising of out plaintiff's bill. *Chandler & Price Co. v. Brandtjen & Kluge, Inc.*, 296 U.S. 53, 58, 56 S.Ct. 6, 80 L.Ed. 39 (1935). The statute of limitations was not raised by TRPA and therefore goes beyond the scope of the original litigation. *Torrington Co. v. United States*, 731 F.Supp. 1073, 1074–75 (C.I.T. 1990). Accordingly, dismissal is not appropriate on this basis.

 Even if the League were allowed to raise a statute of limitations defense, TRPA's waiver would defeat such a defense.[7] Equitable tolling is a defense to all federal statutes of limitations, unless Congress provides otherwise. *Fadem v. United States*, 52 F.3d 202, 205 (9th Cir.1995) (citing *Irwin v. Department of Veterans Affairs*, 498 U.S. 89,

92, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).[8] The language of the Compact does not provide that the 60-day period is jurisdictional. Indeed, similarly and more harshly phrased timing provisions have been held subject to equitable tolling. *See, e.g., Burnett v. New York Cent. R.R.*, 380 U.S. 424, 426, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) ("[N]o action shall be maintained ... unless commenced within three years of the day the cause of action accrued."); *Cedars–Sinai Medical Ctr. v. Shalala*, 125 F.3d 765, 770 (9th Cir.1997) ("Except as provided by the Contract Disputes Act of 1978, every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."); *William G. Tadlock Const. v. United Stated Dept. of Defense*, 91 F.3d 1335, 1340 (9th Cir.1996) ("[C]omplaint may not be filed more than 180 days after the later of the date on which the violation is alleged to have occurred or was discovered.)"

 Equitable tolling extends to situations where the complainant has been induced by his adversary's misconduct into allowing the filing deadline to pass. *Irwin*, 498 U.S. at 96–97, 111 S.Ct. at 458. Although TRPA's alleged waivers do not amount to misconduct, they appear to have induced plaintiffs into allowing the 60-day deadline to pass. If that is the case, the statute may have been tolled, and thus, dismissal would not be appropriate on this basis.

### 2. The Ordinance As Federal Law

Whether the Ordinance is state or federal law is a threshold issue bearing on a number of plaintiffs' claims. Thus, the court will address this issue at the outset.

As set forth above, California and Nevada entered into the Compact to create a regional

---

7. The League's contention that TRPA lacked the authority to extend the statute of limitations because it lacks the authority to modify the terms of the Compact is unavailing. Extending the statute of limitations does not constitute a "modification" of the Compact. Accordingly, TRPA had the authority to extend the statute. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (a statute of limitations which is not jurisdictional is "subject to waiver, estoppel and equitable tolling.").

8. The League's reliance on pre-*Irwin* cases is largely misplaced as the Ninth Circuit has held that "earlier statements that statutes of limitations are jurisdictional in nature have no continuing validity after the Court's decision in *Irwin*." *Cedars–Sinai Medical Ctr. v. Shalala*, 125 F.3d 765, 770 (9th Cir.1997) (quoting *Fadem*, 52 F.3d at 206) (quotations omitted).

agency with extensive powers to regulate and control development within the Lake Tahoe Basin in order to protect the natural resources and ecological balance of the area. *League to Save Lake Tahoe,* 507 F.2d at 518. Subsequent thereto, Congress consented to the Compact "in order to encourage the wise use and conservation of the waters of Lake Tahoe and the resources of the area around said lake." Tahoe Regional Planning Compact, Pub.L. 91–148, 83 Stat. 360 (1960); Tahoe Regional Planning Compact—Consent of Congress, Pub.L. 96–551, 94 Stat. 3233 (1980). It is well settled, and plaintiffs do not dispute, that congressional consent transformed the Compact into federal law. *Cuyler v. Adams,* 449 U.S. 433, 438, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981); *League to Save Lake Tahoe,* 507 F.2d at 519. The parties, however, dispute whether the Ordinance is federal or state law.

This hybrid legislation represents a conscious effort by the state participants, through Congressional consent, to impose the federal imprimatur on actions affecting important and often sensitive regional interests. The Compact which created TRPA mandates that: (1) TRPA develop environmental threshold carrying capacities for the region, (2) the governing body "adopt all necessary ordinances, rules and regulations to effectuate the adopted regional plan," and (3) the regulations "shall contain standards including, but not limited to . . . [w]ater purity and clarity." Compact, Art. V(b), Art. VI(a). Moreover, the Compact expressly provides that TRPA "may . . . adopt air or water quality standards or control measures *more stringent* than the applicable State implementation plan or the applicable Federal, State or local standards for the region, if it finds that such additional standards or control measures are necessary to achieve the purposes of this compact." Compact, Art. V(d) (emphasis added).

▮ Insofar as the Compact is federal law, it would seem that actions mandated thereunder would likewise have the force of federal law. Accordingly, the Ninth Circuit has consistently held that the interpretation and application of TRPA ordinances present federal questions for purposes of subject matter jurisdiction. *See, e.g., California Tahoe Regional Planning Agency v. Jennings,* 594

F.2d 181, 187 (9th Cir.1979) (citing *Lake Tahoe v. B.J.K. Corp.,* 547 F.2d 1072, 1075 (9th Cir.1976)); *Tahoe Regional Planning Agency v. McKay,* 769 F.2d 534, 536 (9th Cir.1985); *League to Save Lake Tahoe v. Crystal Enterprises,* 685 F.2d 1142, 1144 (9th Cir.1982).

Although the Ninth Circuit has not addressed the precise question of whether a TRPA ordinance itself is federal or state law, at least two district courts have addressed the issue. In *Stephans v. Tahoe Regional Planning Agency,* Chief Judge Edward C. Reed of the Nevada District Court held that certain zoning regulations and ordinances adopted by TRPA were federal law. 697 F.Supp. 1149, 1152 (D.Nev.1988). In *City of South Lake Tahoe v. Tahoe Regional Planning Agency,* Judge Edward J. Garcia of the Eastern District of California held that a TRPA order limiting the number of flights to the South Lake Tahoe Airport was a "federally authorized regulatory scheme[ ]." 664 F.Supp. 1375, 1378 (E.D.Cal.1987).

The Compact itself clearly contemplates that State and local ordinances, rules, regulations and policies are subordinate to those of TRPA in this area. Indeed, California and Nevada expressly divested themselves of their respective state interests when they ceded jurisdiction and authority to TRPA. Article VI(a) of the Compact provides in pertinent part:

> Whenever possible without diminishing the effectiveness of the regional plan, the ordinances, rules and regulations and policies shall be confined to matters which are general and regional in application, leaving to the jurisdiction of the respective States, Counties and cities the enactment of specific local ordinances, rules, regulations and policies which conform to the regional plan.

Plaintiffs' reliance on *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) is misplaced. Contrary to plaintiffs' contention, *Lake Country Estates* does not define the legal status of ordinances duly adopted by TRPA pursuant to the Compact. There, the Court held that when enacting an ordinance, TRPA and its officers act "under

color of state law" for purposes of § 1983. *Id.* at 399, 99 S.Ct. 1171. It does not follow, however, that such an ordinance constitutes state law.

Although TRPA's governing board members may act under color of state law when they enact the Ordinance, the Ordinance itself is the product of the mandate of the Compact. And it is the mandate of the Compact which in turn informs the Ordinance with federal character.

Indeed, in *Lake Country Estates,* Justice Stevens acknowledged this anomaly when he observed that while TRPA was originally created by the States, TRPA was not an "arm of the State" or subject to its control. Thus, the court held that TRPA was not entitled to sovereign immunity under the Eleventh Amendment which affords protection only to "one of the United States." 440 U.S. at 401, 99 S.Ct. 1171. In so finding, the court explained that:

> [W]hile TRPA, like cities, towns, and counties, was originally created by the States, its authority to make rules within its jurisdiction is not subject to veto at the state level. Indeed, that TRPA is not in fact an arm of the State subject to its control is perhaps most forcibly demonstrated by the fact that California has resorted to litigation in an unsuccessful attempt to impose its will on TRPA. *See California v. Tahoe Regional Planning Agency,* 516 F.2d 215 (9th Cir.1975).

*Id.* at 402, 99 S.Ct. 1171.

Moreover, following the Court's decision in *Lake Country Estates,* the Supreme Court reaffirmed that compacts are federal law, *Cuyler,* 449 U.S. at 438, 101 S.Ct. 703, and, the Ninth Circuit held that the interpretation of a TRPA ordinance is a question of federal law. *Crystal Enterprises,* 685 F.2d at 1144.

For all the foregoing reasons, the court finds that the Ordinance is federal law.

### 3. The Ordinance Preempts Plaintiffs' State Law Claims

TRPA contends that "[b]ecause TRPA adopted the Ordinance pursuant to a congressionally-approved Compact … it is fed-

eral law and therefore preempts … state law provisions."

 Federal law preempts state law when Congress has "adequately indicated an intent to occupy the field of regulation" or if the state law conflicts with federal law. *O'Hara v. Teamsters Union Local # 856,* 151 F.3d 1152, 1160–61 (9th Cir.1998) (citing *Brown v. Hotel & Rest. Employees & Bartenders Int'l Union Local 54,* 468 U.S. 491, 500–01, 104 S.Ct. 3179, 82 L.Ed.2d 373 (1984)).[9] A conflict exists when it is impossible to comply with both state and federal law, or where the state law is an "obstacle" to the full purposes and objectives of Congress. *Id.* By alleging that the Ordinance "violates" provisions of the California and Nevada Constitutions and various state laws, plaintiffs necessarily contend that the Ordinance is in some fashion subordinate to state law. The court disagrees. To the extent that the Ordinance conflicts with state law, the Ordinance preempts state law. *Id.; see also Stephans,* 697 F.Supp. at 1152.

The only exception to this rule is where a compact specifically reserves the right of the state to impose state law on the compact organization. *See Seattle Master Builders Ass'n v. Pacific Northwest Power & Conserv. Planning Council,* 786 F.2d 1359, 1371 (9th Cir.1986), *cert. denied,* 479 U.S. 1059, 107 S.Ct. 939, 93 L.Ed.2d 989 (1986) (citing *People v. City of South Lake Tahoe,* 466 F.Supp. 527, 537 (E.D.Cal.1978)). The Compact does not reserve rights of the states which have any bearing on the substance of the Ordinance. Accordingly, plaintiffs' eleventh through eighteenth causes of action are dismissed with prejudice.

### 4. Equal Protection and Due Process

Plaintiffs contend that the Ordinance "irrationally and unfairly discriminates between owners of carburetted [sic] two-cycle engine watercraft and owners of other watercraft." Complaint, ¶ 52.

---

**9.** By consenting to the Compact, Congress did not intend to occupy the entire field of regulation, as the Compact makes reference to the continued viability of certain state laws. *See, e.g.,* Compact, Art. V(d), X(a).

## A. Equal Protection

■ "[S]tate action that does not implicate a fundamental right or suspect classification passes constitutional muster under the equal protection clause so long as it bears a rational relation to a legitimate state interest....." *Armendariz v. Penman*, 75 F.3d 1311, 1326 (9th Cir.1996) (citing *New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976)).

■ The Ordinance does not implicate a fundamental right or suspect classification. Plaintiffs, however, contend that the Ordinance "has no reasonable basis" and is "arbitrary and unreasonable on its face." Complaint, ¶ 54. The Ordinance prohibits the use of carbureted two-stroke engines which "discharge of unburned fuel and oil [during] operation." Prohibiting the discharge of unburned fuel and oil is rationally related to a legitimate government interest—pollution control. It is also rationally related to establishing minimum water purity and clarity standards as mandated by the Compact. Accordingly, plaintiffs' equal protection claim contained in their first cause of action is dismissed with prejudice.

## B. Substantive Due Process

■ Plaintiffs contend that "the [Ordinance's] classification of plaintiffs and watercraft are [sic] arbitrary and unreasonable ... and deprives plaintiffs of their private property and business without due process of law [in violation of the Fifth and Fourteenth Amendments]." Complaint, ¶ 54. Because, however, the conduct that plaintiffs allege is the type of government action that the Fourth and Fifth Amendments regulate, their substantive due process claim is barred. *Armendariz*, 75 F.3d 1311, 1324 (9th Cir. 1996); *see also Sinclair Oil Corp. v. County of Santa Barbara*, 96 F.3d 401, 407 (9th Cir.1996) (holding substantive due process claims cannot apply where the government has allegedly effected a taking); *Macri v. King County*, 126 F.3d 1125, 1129 (9th Cir. 1997) (same), *cert. denied*, —— U.S. ——, 118 S.Ct. 1178, 140 L.Ed.2d 186 (1998). Accordingly, plaintiffs' substantive due process

claim contained in their first cause of action is dismissed with prejudice.[10]

## 5. Dormant Commerce Clause

Plaintiffs contend that the Ordinance "disfavors and discriminates against interstate commerce by prohibiting an otherwise legal use of motorized watercraft on an interstate waterway." Complaint, ¶ 58.

■ In addition to being an affirmative grant of congressional authority, the Commerce Clause is in its negative aspect also a limitation on the regulatory authority of the states. *Shamrock Farms Co. v. Veneman*, 146 F.3d 1177, 1178 (9th Cir.1998).

■ As set forth above, the Ordinance is a federal law (not a state regulation), and thus, is not subject to limitation by the Dormant Commerce Clause. Accordingly, plaintiffs' second cause of action is dismissed with prejudice.

## 6. Federal Aid in Sport Fish Restoration Act

The Federal Aid in Sport Fish Restoration Act ("FASFRA") requires that states that receive FASFRA funds use at least ten percent of the funds for recreational boating access facilities and that such facilities accommodate "power boats with common horsepower ratings." 16 U.S.C. §§ 777—777k; 50 C.F.R. § 80.24. Plaintiffs contend that because TRPA approved permits for various marinas and launch facilities built with FASFRA funds, TRPA is subject to FASFRA's requirements. Complaint, ¶ 66. More specifically, plaintiffs contend that under FASFRA, they have a federal right to launch and recover watercraft propelled by carbureted two-stroke engines at such marinas and launch facilities, and that the Ordinance deprives them of that right. Complaint, ¶¶ 67, 68.

■ In exchange for receiving FASFRA funds, California and Nevada expressly promised to abide by the terms and regula-

10. Plaintiffs' complaint does not set forth any allegations which could reasonably be construed as even attempting to state a procedural due process claim. Plaintiffs, of course, may move to amend their complaint to include a procedural due process claim pursuant to Fed.R.Civ.P. 16 and the court's May 7, 1998 Amended Status (Pretrial Scheduling) Order, Section II.

tions set forth in the legislation, including the equal access requirement. *See Buckley v. City of Redding*, 66 F.3d 188, 192 (9th Cir. 1995). Plaintiffs do not allege that TRPA received any such funds. Rather, they contend that by approving permits for FASFRA funded sites they "expressly and impliedly consented to the equal access requirements under FASFRA for all boaters." Complaint, ¶ 66. Contrary to plaintiffs' assertions, the mere act of approving a permit does not constitute an express or implicit consent to be bound by FASFRA. *Buckley* makes it clear that it is the receipt of funds which gives rise to the obligation. *Id.* As the court explained, "[t]he City agreed to operate the facility knowing that the funds came from the Federal Aid in Sport Fish Restoration Act." Because plaintiffs have failed to (1) allege that TRPA applied for or received FASFRA funds or (2) allege facts which support their conclusion that TRPA impliedly or expressly consented to FASFRA's equal access requirements, they fail to state a claim upon which relief can be granted. Accordingly, plaintiffs' third cause of action is dismissed; plaintiffs are granted leave to amend as set forth below.

## 7. Takings Claim

Plaintiffs contend that the Ordinance deprives individual watercraft owners, concessionaires and retailers of their property rights and interests without just compensation. Complaint, ¶¶ 75, 76.

■ To prevail on their takings claim, plaintiffs must demonstrate that the regulation at issue "does not substantially advance legitimate state interests … or denies an owner economically viable use of his land." *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980).

■ The Ordinance substantially advances legitimate governmental goals. Congress consented to the Compact "in order to encourage the wise use and conservation of the waters of Lake Tahoe and the resources of the area around said lake." Tahoe Regional Planning Compact—Consent of Congress, Pub.L. 96–551, 94 Stat. 3233 (1980). Moreover, according to the Compact, "[t]he waters of Lake Tahoe and other resources of the region are threatened with deterioration

or degeneration, which endangers the natural beauty and economic productivity of the region," and "[t]here is a public interest in protecting, preserving and enhancing these values for the residents of the region and for visitors to the region." Art. I(a)(1) & (7). Accordingly, the Compact created TRPA and expressly directed its governing body to "adopt all necessary ordinances, rules, and regulations …. [which] shall contain standards including … water purity and clarity." Compact, Art. VI(a). The Ordinance is an exercise of TRPA's power to protect the waters of Lake Tahoe, and it advances legitimate state interests.

With respect to economic deprivation, plaintiffs contend that as a practical matter the Ordinance bans the use of carbureted two-stroke engines on the aforementioned waterways. Assuming plaintiffs' construction of the Ordinance is correct, plaintiffs still cannot demonstrate as a matter of law that they have been denied economically viable use of their property.

■ The Ordinance does not compel the surrender of watercraft powered by two-stroke engines or two-stroke engines themselves. *Andrus v. Allard*, 444 U.S. 51, 65, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979). Rather, a restriction has been imposed on their use. "[W]here an owner possesses a full 'bundle' of property rights, the destruction of one 'strand' of the bundle is not a taking because the aggregate must be viewed in its entirety…. A reduction in the value of property is not necessarily equated with a taking." *Id.* at 65–66, 100 S.Ct. 318.

Here, plaintiffs are free to continue to manufacture, sell, rent and use watercraft propelled by carbureted two-stroke engines, including those which discharge unburned fuel and oil during operation. That their use may be prohibited on Lake Tahoe and certain other waterways and that such a prohibition may result in reduced profits for manufacturers, retailers and concessionaires or additional burdens to watercraft users does not amount to a taking in violation of the Fifth Amendment. As the Court teaches in *Andrus:*

> [G]overnment regulation—by definition—involves the adjustment of rights for the public good. Often this adjustment cur-

tails some potential for the use or economic exploitation of private property. To require compensation in all such circumstances would effectively compel the government to regulate by *purchase.*

*Id.* at 65, 100 S.Ct. 318 (emphasis in original). Here, while the curtailment of the use of such engines may restrict both the use and economic exploitation of plaintiffs' property, TRPA found such curtailment necessary to achieve a perceived public benefit, namely the protection of the waters of Lake Tahoe and certain other waterways.

Accordingly, the court finds that the Ordinance does not constitute an unconstitutional taking, and plaintiffs' fourth cause of action is dismissed with prejudice.

### 8. Access to Navigable Waterway

Plaintiffs contend that the Ordinance violates 33 U.S.C. § 403 because it "obstructs access" to a navigable waterway. Complaint, ¶ 81. Section 403 prohibits "the creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States."

By its own terms section 403 contemplates physical obstructions. Plaintiffs cite no authority for their position that section 403 also applies to "regulatory" obstructions, nor has the court found any such authority. Plaintiffs rely on *United States v. Republic Steel Corp.*, 362 U.S. 482, 486–87, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960) for their contention that an "obstruction ... does not need to be a 'physical' obstruction or structure." There, however, the Supreme Court held only that "obstructions" for purposes of section 403 were not limited to structures generally or those specifically enumerated in the second clause of the section 403. *Id.* Significantly, that case involved a physical obstruction—industrial deposits placed in a river and found to have reduced the depth of the channel of the river—and the Court found the deposits constituted an "obstruction" for purposes of section 403. *Id.* at 489, 80 S.Ct. 884.[11] Contrary to plaintiffs assertion, a physical obstruction is required under the case law interpreting the statute; a "reg-

ulatory" obstruction does not suffice. Accordingly, plaintiffs' fifth cause of action is dismissed with prejudice.

### 9. Violation of Compact Requirements

Plaintiffs sixth, seventh and eighth causes of action allege violations of various provisions of the Compact. Plaintiffs contend that TRPA failed to (1) prepare and consider a detailed environmental impact statement before enacting the Ordinance, (2) identify any environmental threshold carrying capacity that was violated by the operation of carbureted two-stroke motorized watercraft, and (3) make written findings, supported by substantial evidence in the record, that (i) the approval of the Ordinance will not cause the environmental threshold carrying capacities to be exceeded or (ii) the Regional Plan, as amended, will achieve and maintain the environmental threshold carrying capacities.

The League moves for judgment on the pleadings on the grounds that (1) TRPA had no duty under the Compact to prepare an environmental impact statement before adopting the Ordinance, (2) plaintiffs fail to allege any facts in support of their claim that the Ordinance violates the environmental threshold carrying capacities and (3) TRPA was not required to make written findings.

At this stage of the proceedings, the court cannot determine as a matter of law whether (1) TRPA was required to prepare an environmental impact statement before adopting the ordinance, (2) the Ordinance violates TRPA's environmental threshold carrying capacity for recreation, or (3) TRPA was required to make written findings before adopting the Ordinance. These claims require interpretations of various Compact provisions and terms which would be premature at this time.

Accordingly, plaintiffs' sixth, seventh and eighth causes of action will not be dismissed on this basis. As set forth above, these causes of action are dismissed in so far as plaintiffs have not set forth compliance with the applicable statute of limitations in their complaint; however, plaintiffs are granted leave to amend as set forth below.

---

**11.** The other case relied on by plaintiffs, *United States v. Lambert*, 915 F.Supp. 797, 803–805 (S.D.W.Va.1996), also dealt with physical ob-

structions—the construction of a dock and the placement of broken concrete, stone, and soil on the riverbank.

## 10. Vagueness

Plaintiffs contend that the Ordinance is impermissibly vague and therefore void because it fails to define the terms of the proposed prohibition in an understandable manner and by its terms is incapable of being equitably and fairly enforced. Complaint, ¶¶ 104, 105.

■■■■■ "A [law] is void for vagueness when it does not sufficiently identify the conduct that is prohibited. Thus, the Fifth Amendment due process clause requires a statute to be sufficiently clear so as not to cause persons 'of common intelligence ... necessarily [to] guess at its meaning' and 'to differ as to its application.'" *United States v. Wunsch*, 84 F.3d 1110, 1119 (9th Cir.1996) (citing *Connally v. General Const. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)).

■■■■ The portion of the Ordinance at issue here prohibits "[t]he discharge of unburned fuel and oil from the operation of watercraft propelled by carbureted two-stroke engines ... commencing June 1, 1999." Plaintiffs contend that the language of the Ordinance is imprecise because persons of ordinary intelligence "likely" cannot determine (1) whether a carbureted two-stroke engine does or does not discharge unburned fuel and oil, and (2) whether an engine is a carbureted two-stroke engine or another type of engine. Plaintiffs' contentions are unavailing. If plaintiffs' contentions were correct, many laws, including California's own emissions laws, would be void for vagueness because many individuals lack the ability to determine whether they are in compliance. That plaintiffs and other similarly situated individuals may have to investigate whether a particular engine is covered

by the Ordinance or in compliance therewith does not make the Ordinance impermissibly vague. The language of the Ordinance is clear: individuals who use watercraft propelled by carbureted two-stroke engines which discharge unburned fuel or oil during operation on Lake Tahoe and other designated waterways on or after June 1, 1999, will be subject to civil penalties. The Ordinance gives adequate notice to people of ordinary intelligence of that conduct which is prohibited and does not invite arbitrary or discriminatory enforcement.[12] Accordingly, plaintiffs' ninth cause of action is dismissed with prejudice.

## 11. Clean Water Act

Plaintiffs contend that the Ordinance conflicts with the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, and regulations promulgated thereunder, and is therefore void under the Supremacy Clause of the United States Constitution. Complaint, ¶ 111.

■■■■ As a federal law, the Ordinance is not subject to preemption under the Supremacy Clause. *See City of South Lake Tahoe*, 664 F.Supp. at 1378 ("regulations emanating from the Compact simply do not raise problems of federal preemption"). To the extent the two federal schemes conflict, the Compact should be given effect "because it is a congressional enactment passed later in time and, is more specific than the [Clean Water Act] as it is limited to a very narrow geographical area." *Id.* at 1377.

Accordingly, plaintiffs' tenth cause of action is dismissed with prejudice in so far as it seeks to state a claim for violation of the Clean Water Act. To the extent plaintiffs seek to state a separate claim for violation of Article V, paragraph D of the Compact, plaintiffs are granted leave to amend as set forth below.[13]

---

**12.** Plaintiffs also contend that TRPA failed to disclose how it will enforce the Ordinance, thus plaintiffs are unable to determine whether the manner will be arbitrary and selective. To the extent plaintiffs allege that enforcement *may* be arbitrary or selective, the court may consider such claims as they arise. *See Joseph E. Seagram & Sons v. Hostetter*, 384 U.S. 35, 52, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966); *see also Hodel v. Virginia Surface Mining and Reclamation Assoc.*, 452 U.S. 264, 294 n. 36, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (citation omitted).

**13.** Because plaintiffs' tenth cause of action only alleges violations of the Clean Water Act and regulations promulgated thereunder, the court declines to address alleged violations of the Clean Air Act set forth in plaintiffs' oppositions to defendants' motions. Plaintiffs, of course, may move to amend their complaint to include a claim for violation of the Clean Air Act pursuant to Fed.R.Civ.P. 16 and the court's May 7, 1998 Amended Status (Pretrial Scheduling) Order, Section II.

## CONCLUSION

1. Plaintiffs' first, second, fourth, fifth, ninth and eleventh through eighteenth causes of action are DISMISSED WITH PREJU-DICE.

2. Plaintiffs' third cause of action is DIS-MISSED; plaintiffs may file an amended complaint within fifteen (15) days of service of this order.

3. Plaintiffs' sixth through eighth causes of action DISMISSED; plaintiffs may file an amended complaint within fifteen (15) days of service of this order.

4. Plaintiffs' tenth cause of action is DIS-MISSED WITH PREJUDICE in so far as it seeks to state a claim for violation of the Clean Water Act. To the extent plaintiffs seek to state a separate claim for violation of Article V, paragraph D of the Compact, plaintiffs may file an amended complaint within fifteen (15) days of service of this order.

IT IS SO ORDERED.