**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3577-21

TOWERNORTH DEVELOPMENT,
LLC, and CELLCO PARTNERSHIP,
d/b/a VERIZON WIRELESS,

     Plaintiffs-Respondents,

v.

SHAMONG TOWNSHIP JOINT
LAND USE BOARD,

     Defendant-Respondent,

and

TRAVIS PRATT, individually and
as owner of OAK SHADE, LLC,

     Defendant-Appellant.

_____

Argued November 14, 2023 – Decided February 2, 2024

Before Judges Natali and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1222-21.

Matthew R. McCrink argued the cause for appellant (McCrink, Kehler & McCrink, attorneys; Matthew R. McCrink and Ian Andrew Ballard, on the briefs).

Richard Francis DeLucry argued the cause for respondents TowerNorth Development, LLC, and Cellco Partnership d/b/a Verizon Wireless (Cooper Levenson, PA, attorneys; Warren O. Stilwell and Richard Francis DeLucry, on the brief).

PER CURIAM

Defendant Travis Pratt (Pratt) individually and as owner of Oak Shade, LLC, appeals from the Law Division's June 28, 2022 order reversing defendant Shamong Township Joint Land Use Board's (Board) denial of plaintiffs' TowerNorth Development, LLC and Cellco Partnership d/b/a Verizon Wireless (plaintiffs) application for a use variance, conditional use variance and site plan approval to permit construction of a wireless communication facility. After reviewing the record in light of the contentions advanced on appeal, we affirm substantially for the reasons set forth in the trial court's comprehensive written decisions.

I.

Plaintiffs sought to construct a 150-foot wireless communication monopole, commonly known as a cell tower, with supporting equipment including a concrete pad, on a privately owned property in Shamong Township.

The property, which was already developed with existing structures, abuts both a public school and undeveloped land owned by Pratt, who intended to develop his property with six luxury homes. The property was in a regional commercial growth zone, where township ordinance permits cell towers as conditional uses.

Shamong Township Land Development Ordinance Section 110-96(E)(3)(a) required cell towers to be located on prioritized locations, the first of which is "developed publicly owned lands within 500 feet of an existing structure." In addition, Section 11-9 of the Ordinance limited development of properties to one principle use per lot.

The proposed cell tower conformed to zoning requirements for height and setbacks as well as Pinelands regulations for local communications facilities but was non-conforming in three respects. Therefore, plaintiffs sought a "d-1" variance pursuant to N.J.S.A. 40:55D-70(d)(1) because the cell tower would be a second principal use on the property; a "d-3" variance pursuant to N.J.S.A. 40:55D-70(d)(3) because the property was not a publicly owned land, and a bulk "c" variance pursuant to N.J.S.A. 40:55D-70(c) because the cell tower's concrete pad exceeded the maximum size of 100 feet.

A-3577-21

The Board first considered the application at its February 18, 2018 meeting, during which plaintiffs presented four witnesses. Bert Stern, Vice President of TowerNorth, testified as to the "exhaustive efforts" expended to locate a site on a municipally-owned property, including two locations that were rejected by the Pinelands Commission and another rejected by the Board of Education. Andrew Pertersohn, a licensed professional engineer and radio frequency engineer, testified as to the need for the cell tower, including the height required to meet the coverage and capacity objectives. Joshua Cottrell, a licensed professional engineer, testified as to the engineering aspects of the plan. James Miller, a licensed professional planner, testified as to the visual impact of the cell tower to the surrounding areas. Miller opined the property met the negative criteria for granting a "d-3" variance because the only deviation from the ordinance was that the property was not owned by the township. He further testified that the site was particularly suited to the use, would not impair the public good or zone plan, and would not substantially impair the existing character of the area because the location consisted of multiple mixed uses. No other witnesses testified, but members of the public spoke in opposition.

4

Three Board members voted to approve the application and three voted to deny it, which resulted in a denial of the application. The Board concluded the application satisfied the positive criteria for the bulk "c" variance and the "d-1" and "d-3" variances. However, the Board found plaintiffs failed to satisfy the negative criteria for these variances because the cell tower could not be screened from public view, which would result in adverse visual and aesthetic impacts to the surrounding residential areas. Because the Board denied the application based on the "d-1" and "d-3" variances, it did not address the negative criteria as to the bulk "c" variance. The Board also noted an alternate site it determined to be a better location, and found the Pinelands Commission's refusal to approve that "site was inherently unreasonable, especially considering [p]laintiffs['] exhaustive efforts and demonstration that no other Regional Growth Area sites were feasible for a cell tower." The Board adopted Resolution #2018-11 memorializing its decision.

Plaintiffs challenged the Board's denial by filing an action in lieu of prerogative writs in the Superior Court of Burlington County, Law Division. The court issued a tentative disposition dated June 6, 2019.

After considering the record and arguments of counsel in light of the applicable zoning laws and standard of review, the court found Resolution

A-3577-21

#2018-11 failed to assess the factors necessary to evaluate the positive or negative criteria for variance relief. The court noted the Board "concluded in a single paragraph that [p]laintiffs satisfied the positive criteria for a ["d-1"] use variance and ["d-3"] conditional use variance but failed to satisfy the negative criteria necessary for the requested relief," and its "only conclusion relevant" to the negative criteria was that the cell tower could not "be screened from public view from several nearby residential areas[] . . . which . . . would sustain adverse visual and aesthetic impacts." The court then recited the testimony elicited from Miller, noting the Board did not present any expert testimony to rebut it.

The court recognized the Board's authority not to accept expert testimony, but found its denial of the application unsupported because it failed to explain its reasons for the decision:

> Resolution #2018-11 does not assess the factors necessary to evaluate the positive or negative criteria for variance relief. Furthermore, the record provided to the [c]ourt does not demonstrate any statements from members of the Board regarding the statutory evaluation of the negative criteria for the requested variance relief. The Board Resolution does not demonstrate that the Board analyzed whether the proposed use substantially impairs the intent and purpose of the master plan and zoning ordinance. The Board Resolution does not evaluate the impact of the proposed use on the character of the neighborhood and whether the proposed use would constitute a substantial detriment to the public good. N.J.S.A. 40:55(d)-70.

6

The Board failed to support its denial of variance relief with substantial evidence in the written record.

[(citations reformatted).]

Accordingly, the court reversed the Board's decision and remanded the matter to the Board for further proceedings. The court entered an order dated August 6, 2019, incorporating the reasons articulated in the tentative disposition.

The February 24, 2021 Order

On remand, the Board retained Tiffany A. Morrissey, a licensed professional planner, to assist in evaluating plaintiffs' application. Morrissey provided expert testimony at the Board's November 19, 2019 hearing. Morrissey acknowledged that the cell tower would have a visual impact but in order to consider the negative impact analysis, the Board must consider where the tower could be located pursuant to code without any need for a variance. The answer, she stated, was that the cell tower could be sited on school grounds located a few hundred feet away, which would not be substantially different than the proposed site.

On rebuttal, Pratt offered the testimony of Charles John Poliero, a certified real estate appraiser. Poliero testified that values of residential properties near the cell tower would be diminished by "[ten] to [twenty] percent, depending upon the value of the property, closeness[] and aesthetics of the tower." Poliero

stated that every lot on Pratt's property would have a line of sight to the cell tower and therefore the value of every lot would be affected.

The Board again denied the application, finding that the positive criteria had been met but the negative criteria had not, and memorialized its decision in Resolution #2019-21. Plaintiffs filed an amended complaint in lieu of prerogative writs.

After considering the record and arguments of counsel in light of the applicable zoning laws and standard of review, the court issued a tentative decision dated August 25, 2020. In it, the court noted Poliero's expert testimony was "the most important evidence" the Board relied on in denying the application for failure to meet the negative criteria. Poliero had thirty-five years' experience as a licensed real estate appraiser covering areas of southern New Jersey, and based his opinion on fifteen to thirty real estate appraisals he conducted near cell towers and power lines. Setting aside his opinions regarding the impact of power lines, which was not the issue here, Poliero had only conducted five to ten appraisals involving proximity to cell towers. He did not submit any studies or data at the hearing to support his testimony and instead relied on his recollection and professional experience.

Consequently, the court found Poliero's testimony to be a net opinion:

> First, while . . . Poliero opines that the public's perception of cell towers and powerlines lowers the value of nearby properties, based on his own admission, [he] could not point to any studies he conducted to support this conclusion. Additionally, . . . Poliero concluded that a 150-foot tower, with a 60-foot compound, within 400 feet of a nearby property would typically result in a 10 to 20 percent diminution of value, depending on the value of the property, closeness, and the aesthetics of the tower, but failed to provide any data or documents memorializing comparable sales to the hearing. Most notably, although . . . Poliero indicated that the proposed cell tower would result in a 10 to 20 percent diminution of . . . Pratt's property value, . . . Poliero offered no calculations or other information to bolster the specific range he presented to the Board. Without more information, no reasonable factfinder would be able to rely on [his] testimony as evidence of the adverse impacts of cell towers on neighboring property values or the potential impact of the proposed cell tower at issue on nearby property values.

The court searched other parts of the record to determine whether it contained any additional evidence to support Poliero's conclusion but found none.

The Board argued that, although plaintiffs represented they could not co-locate the cell tower on an existing power line, it found a case where co-location had been accomplished. Thus, the Board contended, plaintiffs should be required to apply to Public Service Electric & Gas (PSE&G) to co-locate the cell tower with PSE&G's power equipment. Plaintiffs countered that PSE&G

9

had restrictions on emergency generators which rendered co-location on those sites unsuitable. The court rejected the Board's argument, finding "[p]laintiffs [did] not have a legal burden to show all other sites ha[d] been evaluated and rejected before it [could] select a non-conforming site and request variance relief."

The court's tentative disposition again reversed the Board's denial and "[remanded] for reconsideration by the Board and for the Board to make appropriate factual findings as to the potential adverse impact of the proposed cell tower on nearby residential property values." Before entering an order, the court permitted the parties to submit supplemental briefing to address whether the matter should have been remanded to the Board or if the court should have exercised original jurisdiction to grant the application.

The court issued a second tentative decision dated December 22, 2020, which was incorporated in an order dated February 24, 2021, remanding the matter to the Board.

The June 28, 2022 Order

On remand, the Board considered supplemental expert reports from Poliero and from plaintiffs' additional expert, Mark W. Tinder, and rejected both. Poliero's supplemental report focused on the impact of a cell tower, which

was located atop a water tower, on the home values of a nearby townhouse development. The Board did not rely on the report because it found the impact of co-locating a cell tower on an existing water tower not comparable to erecting a new cell tower.

Tinder's report evaluated comparable sales of residential properties in proximity to cell towers in Gloucester Township, Camden County; Springfield Township, Union County; and Hawthorne Borough, Passaic County. He provided the height of and distance to the cell tower along with sales data reflecting adjusted home values compared to the sales price of the target residence near the cell tower. He included homes valued in the high $200,000's, mid $300,000's and mid $500,000's, and concluded the difference was less than one percent in all three studies.

The Board found Tinder's report to be not representative of the subject site and not helpful to its consideration of the application. The Board rejected Tinder's testimony adduced on direct examination, but relied on his opinion that higher-end buyers were more "discerning" and would be less willing to purchase a property near a cell tower or would purchase a property at a decreased price. This statement was in response to a question of whether the existence of a cell

tower would have less of an impact in northern New Jersey because of "higher prices and higher demand of properties" there.

The Board again found plaintiffs failed to establish the negative criteria and denied the application, memorializing its decision in Resolution #2021-9. Plaintiffs again filed a complaint in lieu of prerogative writs.

The court issued a tentative disposition dated March 16, 2022. In it, the court reviewed Tinder's testimony and methodology, and again found the Board's determination not supported by the record:

> The Board did not deem . . . Tinder's testimony to be credible. The basis for this determination was a legal argument unsupported by facts or expert testimony. The argument was that impact on property values adjacent to a junkyard would be less than to a residential development. No facts or expert testimony supported this argument. The Board found that the comparable sales were not comparable. No facts or expert testimony supported this conclusion.

The court addressed the Board's reliance on Tinder's testimony on cross-examination:

> In this instance, his testimony was in response to a question about higher prices and higher demand. While the answer does mention discernment of higher priced buyers, it was in response to support for comparables in this case. It is noteworthy no analysis is offered by the Board to support the finding of lack of credibility of . . . Tinder's testimony. The Board disagrees with his expert's comparability analysis without expert

12

testimony. They make a conclusory statement about his credibility. They do not use expert testimony to answer his analysis that he has not found a negative impact on property values.

Because Tinder explained his methodology, identified the factual bases for his conclusions, and demonstrated reliability, the court found the Board's decision to reject his expert testimony arbitrary and capricious.

The court also rejected the Board's reliance on an unpublished opinion, N.Y. SMSA Ltd. P'ship v. Bd. of Adjustment of Borough of Bernardsville, No. A-4174-12 (App. Div. Apr. 8, 2015) because it was of no precedential value under Rule 1:36-3 and was also factually distinguishable. In that case, the Bernardsville Board of Adjustment considered testimony that two potential buyers lost interest after learning of a planned cell tower, which was deemed to be concrete, as opposed to theoretical, harm to property owners. N.Y. SMSA, slip op. at 8. The Board members there also noted the housing market had stalled in the area after the application had been filed. Ibid.

In contrasting that case with the application here, the court found:

> There is no testimony that buyers lost interest here. There is no testimony of concrete as opposed to theoretical harm. There is no testimony that development has stalled here.

13

The court again reversed the Board's decision and permitted the parties to submit supplemental briefs to address whether the matter should have been remanded to the Board.

The court issued a second tentative disposition dated May 27, 2022. At that time, plaintiffs consented to reduce the size of the concrete pad to comply with the ordinance and consequently withdrew their request for a bulk "c" variance, thus rendering that issue moot, and agreed to work with the Board's engineer to develop a landscaping plan.

The court noted that, although the bulk "c" variance had not been addressed in the Board's resolutions because the application was denied based on the two "d" variances, it was noticed and discussed during the public hearings. Citing to Puleio v. N. Brunswick Twp. Bd. of Adjustment, 375 N.J. Super. 613, 621 (App. Div. 2005), the court explained that an application for a "c" variance and a "d" variance "cannot coexist." This is so because if a particular use is "not permitted in the zone, the bulk regulations designed for [the] zone cannot be applicable to the intended use." The court further opined:

> Similarly, the Appellate Court in O'Donnell v. Koch found a bulk variance to be subsumed when the deviations from the bulk regulations "were necessarily included in the grant" of the use variance.[] 197 N.J. Super. 134, 145 (App. Div. 1984). In O'Donnell, the Appellate Court found [the] use variance for funeral

home parking lot in residential zone subsumed bulk variances regarding curb cuts, privacy fencing, and separation distances between curb cuts and residence. Id. at 146. The court concluded that the factual findings of the Board and the governing body after the second remand by the trial judge were sufficient, and that under the circumstances of this case those deviations from the ordinance were necessarily included in the grant[] of the use variance. [Ibid.]

[(citations reformatted).]

As to plaintiffs' application, the court found:

The proposed use is permitted in the subject zone as a conditional use however the [a]pplication did not comply with just one of the conditions and consequently a ["d-3"] variance is required. The application also sought a variance for a [second] principal use on the property. Other relief included a bulk variance for the size of the equipment pad. [The Board] in its Resolution #2018-11 discussed the nature of the . . . relief requested[,] i.e. the ["d-3"] conditional use variance for the deviation from not locating on a prioritized site, the ["d-1"] use variance for proposing a second principal use on the property and the bulk variance for the size of the equipment pad. It looked at the overall site design and its economic impact on the surrounding residential property values. It stated that the proposed 150' height of the [c]ell [t]ower cannot be screened from public view from several nearby residential areas and as a result they suffer adverse visual and aesthetic impacts. . . . [The Board] here considered the overall design of the tower to assess the use variance and bulk variance application.

[(citations to the record omitted).]

15

The court further noted Resolution #2019-21 specifically found the positive criteria had been met for the bulk "c" variance and both "d" variances, which demonstrates the Board "consider[ed] the use variance and bulk variance together when deciding the '[n]egative [c]riteria.'"

Because the bulk "c" variance had been subsumed into the analysis of the "d" variances, the court determined that remanding the case again "would be unnecessary and will prove only dilatory." The court also found the bulk "c" variance was moot because plaintiffs agreed to reduce the size of the concrete pad to conform with the ordinance, which eliminated the need for the variance.

The court entered an order on June 28, 2022, incorporating the reasons articulated in its prior tentative dispositions, reversing the Board's denial and approving plaintiffs' application, conditioned on the reduction in the concrete pad and "on [p]laintiffs' development of an acceptable landscaping plan for the site in conjunction with the review and approval of same by the Board [e]ngineer."

This appeal followed.

## II.

"[W]hen reviewing the decision of a trial court that has reviewed municipal action, we are bound by the same standards as was the trial court."

A-3577-21

Fallone Props., L.L.C. v. Bethlehem Twp. Planning Bd., 369 N.J. Super. 552, 562 (App. Div. 2004).  Thus, our review of the Board's action is limited.  See Bressman v. Gash, 131 N.J. 517, 529 (1993) (holding that appellate courts are bound by the same scope of review as the Law Division and should defer to the local land-use agency's broad discretion).

It is well-established "that a decision of a zoning board may be set aside only when it is 'arbitrary, capricious or unreasonable.'" Cell S. of N.J. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002) (quoting Medici v. BPR Co., 107 N.J. 1, 15 (1987)).  "[P]ublic bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 597 (2005).  Therefore, "[t]he proper scope of judicial review is not to suggest a decision that may be better than the one made by the board, but to determine whether the board could reasonably have reached its decision on the record." Ibid.

On appeal, Pratt presents the following issues for our consideration:

> I.    The Shamong Joint Land Use Board was Not Limited to Expert Testimony and Could Consider Any Testimony it Found Credible.
>
> II.    The Trial Court Erred by Judicially Approving a Modified Application Without Requiring the Applicant to Submit Modified Plans or Holding [a] Public Hearing.

III. The Trial Court Erred in Overturning the Board's Determination that Plaintiffs Had Failed to Carry Their Burden of Proof Regarding the "Negative Criteria."

IV. The Trial Court Did Not Properly Defer to the Broad Discretion Afforded the Board Derived from its Familiarity with Local Conditions.

V. The Trial Court Improperly Ruled that Pratt's Expert Testimony of Charles John Poliero was a Net Opinion.

VI. The Planning Board's Denial was Reasonable as a More Suitable Location for Plaintiffs Proposed Tower was Available.

Applying the above standards, we discern no reason to disturb the trial court's decision and affirm substantially for the reasons expressed in its comprehensive and well-reasoned opinions. We add the following comments.

When an applicant seeks a use variance, it must demonstrate special reasons for granting the variance under the Municipal Land Use Law, N.J.S.A. 40:55D-70(d)(1). These special reasons are referred to as the "positive" criteria. Here, the Board's determination plaintiffs met the "positive" criteria is not challenged.

An applicant must also demonstrate "negative criteria" by showing the variance "can be granted without substantial detriment to the public good and will not substantially impair the intent and the purpose of the zone planning and

18

zoning ordinance."  N.J.S.A. 40:55D-70(d).  An applicant has the additional "enhanced quality of proof" to secure "clear and specific findings by the board of adjustment that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance."  Medici, 107 N.J. at 21.

Defendant's first issue, that the Board could have considered lay testimony in support of its decision, was not directly raised below and we therefore would typically decline to consider it.  See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).  However, the trial court noted that proof of a negative impact of a cell tower on surrounding properties generally requires qualified expert testimony, citing Smart SMR v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 336 (1998).  We agree that this case falls into that category.  To the extent any objectors provided testimony or input in opposition to the application, the Board heard it; however, the issue of the cell tower's impact on property values required expert testimony.

As to Poliero's testimony, the court reviewed the transcripts of the Board's March 26, 2021 hearing and correctly determined he offered a net opinion. Although Poliero had real estate experience, he did not produce any report or data to support his testimony.  He could not identify specific sites he evaluated, studies he had conducted, and could not recall the distance from the residences

to the cell tower in the five to ten appraisals he had evaluated. Because he could not "give the why and wherefore" that supported his opinion, it amounted to a mere conclusion. See Pomerantz Paper v. New Cmty. Corp., 207 N.J. 344, 372 (2011) (quoting Polzo v. Cnty. of Essex, 196 N.J. 569, 583 (2008)).

We also find unpersuasive defendant's argument that the Board's denial was reasonable because a more suitable location was available. As the trial court found, plaintiffs were not required to exhaust all alternative locations before seeking a variance. Rather, an applicant must show a "reasonable and good faith effort to find an alternative, less-intrusive site" for the project. Ocean Cnty. Cellular Tel. Co. v. Twp. of Lakewood Bd. of Adjustment 352 N.J. Super. 514, 528 (App. Div. 2002). The record contains Stern's testimony about the efforts expended in locating a site for the cell tower. Plaintiffs' decision not to pursue co-locating on PSE&G property was reasonable because they would have been restricted from installing a generator, which was Verizon's preferred source for backup power.

We also agree with the trial court's determination that, after the Board considered plaintiffs' application in the first instance and twice more on remand, its decision was not supported by the record because plaintiffs amply demonstrated they met the negative criteria. The court painstakingly reviewed

20

Tinder's expert testimony, which was supported by data and unrebutted by any other expert.

Having made those determinations, the court also correctly decided a remand was neither necessary nor appropriate. Plaintiffs agreed to comply with the size requirements and withdrew their request for a bulk "c" variance. As fully explained in its decision, the court determined the "c" variance had been subsumed into the "d" variances, and therefore had been addressed in the context of considering the application.

To the extent we have not expressly addressed any issues raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3577-21